Stephen R. HALL, Judith K. Hall and Cedric Blazer, Plaintiffs-Appellants-Cross-Respondents,†

v.

GREGORY A. LIEBOVICH LIVING TRUST restated on December 6, 1999 Gregory A. Liebovich, Trustee, Defendant-Respondent-Cross-Appellant.

Court of Appeals

*No. 2006AP40. Submitted on briefs January 26, 2007. —Decided March 14, 2007.*

2007 WI App 112

(Also reported in 731 N.W.2d 649.)

† Petition to review denied 6/12/07.

726

On behalf of the plaintiffs-appellants-cross-respondents, the cause was submitted on the briefs of *Lisle W. Blackbourn* and *Michael J. Frazier* of *Godfrey, Leibsle, Blackbourn & Howarth, S.C.* of Elkhorn.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the briefs of *Jacob P. Westerhof* and *Megan A. Senatori* of *DeWitt Ross & Stevens S.C.* of Madison. There was a response brief to the nonparty brief of Wisconsin Association of Lakes, Inc. filed by *Donald Leo Bach* and *Megan A. Senatori* of *DeWitt Ross & Stevens, S.C.* of Madison.

A nonparty brief on behalf of Wisconsin Association of Lakes, Inc., was filed by *William P. O'Connor* and *Mary Beth Peranteau* of *Wheeler, Van Sickle & Anderson, S.C.* of Madison.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. BROWN, J. Gregory Liebovich purchased lake-front property, tore down the property's existing house, and built a new one. His neighbors, Stephen and Judith Hall and Cedric Blazer, complained that the new house is several feet too close to the lake, in violation of a restrictive covenant shared by all of their properties. The trial court agreed, but refused to issue an injunction ordering Liebovich to tear down the offending part of his house, and instead awarded monetary damages to the neighbors. The neighbors appeal this remedy, arguing that they are entitled as a matter of law to have Liebovich's deck razed, and also that they are entitled to attorney fees. Liebovich, for his part, argues that the plaintiffs did not show that he violated the setback

restriction at all. He argues that the correct "low water line" from which to measure is the current one, which the plaintiffs did not establish. He also claims that he and his predecessor had obtained a "prescriptive right" to violate the deed restriction.

¶ 2.  We affirm the circuit court's decision in its entirety. As to the neighbors' appeal, the grant or denial of injunctive relief is a matter for the trial court's discretion. The court's findings of fact were not erroneous, and it was reasonable on those facts to conclude that forcing Liebovich to raze and rebuild would be inequitable. We reject the neighbors' attempt to turn a discretionary decision into a series of minute questions of law. Further, the neighbors are not entitled to attorney fees under the *Weinhagen*[1] rule. As to Liebovich's claims, we uphold the circuit court's holding that the restriction was well defined in the relevant deeds. Allowing each new builder to redefine its terms would destroy the uniform setback that is the entire point of the restriction. We also reject Liebovich's claim that he had a prescriptive right to violate the covenant because the statute he relies on applies only to the adverse use of the land of another person, not to violations of deed restrictions on one's own land.

¶ 3.  All of the parties live in an area on the shore of Geneva Lake called Kaye's Park. Each of their properties is subject to a covenant requiring that no home be built within 125 feet of the "low water line." The restriction is common to most of the other lots in the neighborhood, so that there is a uniform 125–foot setback for some distance along the lake. The restriction was in the deed when the property that would eventually become Blazer's and Liebovich's lots was

---

[1] *Weinhagen v. Hayes*, 179 Wis. 62, 190 N.W. 1002 (1922).

first separated from the large lakeside tract in 1946. It was repeated in the deed that divided Blazer's and Liebovich's properties from one another, in 1955. The deed by which Liebovich obtained his property does not include the text of the restriction, but instead refers to "Covenants, conditions and restrictions" and refers to the location of an earlier deed containing the restriction, recorded in 1955.

¶ 4.   That same recorded deed also contains a description of the Liebovich-Blazer property. The property's boundary with the lake is described this way:

> [from a particular] concrete monument; thence continue North Thirteen . . . feet more or less to the shore of Geneva Lake at low water mark; thence Northeasterly along said shore at low water line, Two Hundred Thirty-four and ten hundredths . . . feet more of less; thence South Fourteen degrees, Thirty minutes . . . East Fifteen . . . feet more or less to an iron pipe . . . .

¶ 5.   In the process of purchasing the property, Liebovich's attorney received a title commitment for title insurance which referred to the restrictions in the recorded deed. Liebovich also received a portion of the commitment. Liebovich later received both his deed and his title policy, which both referred to the restrictions in the recorded deed.

¶ 6.   Liebovich tore down the existing house on his property and began to build a new one. A property owner in the neighborhood called Liebovich's architect and warned him about the restriction. The architect told Liebovich about this, and Liebovich spoke with his attorney. Liebovich decided to continue the construction.

¶ 7.   In March 2003, Hall made some measurements and concluded that Liebovich's house was closer

than 125 feet to the shore. Hall and Blazer had an attorney write letters to Liebovich complaining. After receiving the complaints, Liebovich talked to his surveyor, who told Liebovich that he did not know anything about "low water line." Liebovich concluded by reference to fixed objects that his house was farther from the lake than the previous house had been and that it conformed to the setback and decided to keep building.

¶ 8. Hall and Blazer filed suit, requesting an injunction and other remedies. After a partial summary judgment and a six-day trial, the court found that parts of Liebovich's second-story deck violate the setback restriction. The court determined that a survey prepared by Hall and Blazer's expert properly showed the low water line, and that Liebovich's house was only 106 feet from it at its closest point. The court found that the portions of Liebovich's house that encroach on the setback "interfere with the uniformity of the Kaye's Park neighborhood, restrict views and natural scenery from the Hall and Blazer properties, and interfere with privacy on the Blazer property." The court found that Liebovich's breach of the setback deprived Hall and Blazer of "a real interest in property." It found that Blazer was "not as vigilant as he could have been" in discovering Liebovich's violation, but that Hall and Blazer had not waived their right to enforce the deed restriction, nor were they barred from enforcement by the doctrines of estoppel, unclean hands, laches, abandonment, or acquiescence.

¶ 9. Nevertheless, the court denied Hall and Blazer's request for an injunction requiring Liebovich to tear down his deck. The court found that tearing down the deck would cost between $100,000 and $200,000 and would destroy "the central feature of

731

the . . . house." This, the court found, would outweigh any benefit to Hall and Blazer from having the offending portions of Liebovich's house removed. The court also found that Liebovich had made "an honest mistake" and that his belief that he was in compliance with the deed restriction was reasonable. The court did enjoin Liebovich from further violating the restriction by extending or enclosing his deck, and ordered that if the deck were ever removed, it could not be rebuilt.

¶ 10.   Hall and Blazer first claim that the court was required by law to enjoin Liebovich to raze the offending deck. The grant or denial of equitable relief is within the sound discretion of the trial court. *Mercury Records Prods., Inc. v. Economic Consultants, Inc.*, 91 Wis. 2d 482, 500, 283 N.W.2d 613 (Ct. App. 1979). We will uphold the trial court's discretionary decision if it examined the relevant facts of record, applied the correct legal standard, and reached a conclusion that a reasonable judge could reach. *See State v. Gray*, 225 Wis. 2d 39, 48, 590 N.W.2d 918 (1999). We will not overturn a discretionary decision simply because we would have decided the matter differently. *See State v. Eichman*, 155 Wis. 2d 552, 567–68, 456 N.W.2d 143 (1990).

¶ 11.   Hall and Blazer argue that the court applied an incorrect legal standard when it weighed the hardships that would result from the grant or denial of an injunction. According to Hall and Blazer, a court *must* issue an injunction to enforce a restrictive covenant unless it finds that the hardship resulting from an injunction would be extremely disproportionate to the hardship resulting from no injunction; *or* unless, in

addition to a less-than-extreme disproportion of hardships, the court finds other factors weighing against an injunction.

¶ 12. There is no support for this proposed "test" in our case law or statutes. Hall and Blazer base their claim on a few sentences each of RESTATEMENT (FIRST) OF PROPERTY § 563 cmt. c (1944), and 20 AM. JUR. 2D Covenants, Etc. § 266 (2007). Those sources may provide useful perspectives on the issue; but they do not require us to impose any rigid methodology on the trial court. Hall and Blazer are trying to turn a discretionary decision into a question (or series of questions) of law, and we reject the attempt.[2]

¶ 13. Hall and Blazer repeatedly try the same tactic on a smaller scale. The results are confusing at best. Immediately after telling us that the court could not refuse an injunction because it considered no factors aside from the balance of hardships, they tell us that the court *did* consider another factor—the reasonableness of Liebovich's actions. This was improper, we are told, because it "does not bear on hardships."

¶ 14. Hall and Blazer next complain that the court improperly considered that one of the neighbors was "not as vigilant as he could have been" in his delayed response to Liebovich's construction of his

---

[2] Further, the case that Hall and Blazer rely on most heavily is inapposite. *Forest County v. Goode*, 219 Wis. 2d 654, 579 N.W.2d 715 (1998), is a zoning case not involving a private restrictive covenant. "Unnecessary hardship" is a more stringent standard than the "balance of hardships," and the *Goode* court did not, as Hall and Blazer claim, state that the zoning standard should be used in all land use cases. Rather, it stated that a court considering an injunction in a zoning case should consider the unnecessary hardship standard along with the other traditional equitable factors. *Id.* at 681–82.

house. Citing *Mueller v. Schier*, 189 Wis. 70, 77, 205 N.W. 912 (1925), they tell us that the law "does not require landowners constantly to police their neighbor's compliance with deed restrictions." Be this as it may, the law also does not say that a trial court *cannot* consider a neighbor's delay in objecting to a violation as a factor when deciding whether to issue an injunction. They tell us that the court erred because it "did not adequately consider the evidence establishing that [Liebovich's hardship] was of his own making." But it is clear that the court *did* consider it, and the claim that it did not do so "adequately" is nothing more than an invitation to this court to usurp the circuit court's discretion.

¶ 15.   Hall and Blazer finally object that the trial court erroneously determined that Liebovich had acted "reasonably" and in "good faith." Hall and Blazer claim this was an error of law, but their argument makes plain that they are really asking us to second-guess the trial court's finding that Liebovich made an honest mistake. This we will not do. Nor will we reverse the court's determination that Liebovich had constructive knowledge, but not actual knowledge, of the content of the deed restriction. Hall and Blazer recite several facts found by the court which show that Liebovich (or his attorney) knew of the *existence* of the restriction, but not necessarily its *content*. Certainly, having been informed of the existence of the restriction, Liebovich should have taken greater pains to find out exactly what it meant—but this is precisely the definition of "constructive knowledge." BLACK'S LAW DICTIONARY 888 (8th ed. 2004) ("[k]nowledge that one using reasonable care or diligence *should* have" (emphasis added)). The court certainly *could have* inferred from the evidence presented that Liebovich *actually* knew of the terms of

734

the restriction, but it did not so find, and this finding is not clearly erroneous. The court clearly explained that, when Liebovich became aware of the 125–foot setback, he relied on the position of the house in relation to certain landmarks to determine that the house was in conformity with the setback. That he turned out to be wrong does not mean that he had actual knowledge of his violation. The circuit court properly exercised its discretion to deny Hall and Blazer the injunction.

¶ 16. Hall and Blazer also argue that the court allowed Liebovich to "buy his violation" for a small award of damages and that this is bad policy. They again cite the zoning case *Forest County v. Goode*, 219 Wis. 2d 654, 685, 579 N.W.2d 715 (1998) (Bradley, J., concurring) ("One should not be permitted at the trial court's discretion to purchase through forfeitures a variance from a zoning code." (Citation omitted.)). But the trial court's decision did not give a green light to any potential covenant violator. The court found an accidental violation of a less-than-crystal-clear restriction that would cost a large amount of money to enforce and whose enforcement would benefit Hall and Blazer but little. It properly crafted a remedy that compensates Hall and Blazer and limits future violations while avoiding grievous harm to Liebovich. Its decision applies to these facts alone.

¶ 17. Hall and Blazer next claim that they are entitled to attorney' fees pursuant to the rule of *Weinhagen v. Hayes*, 179 Wis. 62, 190 N.W. 1002 (1922). In general, absent a statute or agreement to the contrary, each party is responsible for his or her own attorney fees. This is the "American rule," to which the *Weinhagen* rule is a judicially-created exception. *Meas v.*

*Young*, 142 Wis. 2d 95, 101, 417 N.W.2d 55 (Ct. App. 1987). The rule allows fees "where the wrongful acts of the defendant have involved the plaintiff in litigation with others, or placed him in such relation with others as to make it necessary to incur expense to protect his interest." *Weinhagen*, 179 Wis. at 65 (quoting *McGaw v. Acker, Merrall & Condit Co.*, 73 A. 731 (Md. 1909)). Plainly, Liebovich has not involved Hall and Blazer in litigation with others; instead they contend that their suit against Liebovich was necessary in order to protect their property rights from the possible future encroachments of other neighbors. Hall and Blazer claim that if they had allowed Liebovich to violate the setback unchallenged, they might have forfeited their legal rights to prevent other neighbors from doing likewise by the doctrines of acquiescence and abandonment.

¶ 18. The claim fails for two reasons. First, the *Weinhagen* rule is narrow, and applying it in the broad and speculative manner Hall and Blazer advocate would threaten to swallow up the American rule. Second, it is a prerequisite of the *Weinhagen* rule that the attorney fees claimed must be expended in litigating *against a third party. See Marquardt v. Milwaukee County*, 2002 WI App 12, ¶ 17, 249 Wis. 2d 780, 639 N.W.2d 762. Hall and Blazer claim that *Meas* makes an exception to this rule, but this is incorrect. In that case, some realtors essentially tricked the sellers of a farm property into indemnifying the realtors against a suit brought by the property's buyers. *Meas*, 142 Wis. 2d at 99–100. When the realtors impleaded the sellers, we allowed the sellers their attorney fees even though their litigation was not *directly* against the third-party buyers. *Id.* at 100, 105. But it was still true that the sellers in *Meas* were forced into a suit involving a third party by the wrongful acts of the realtors. The sellers in *Meas*

were at risk of liability to the third-party buyers, and we refused to deny the sellers attorney fees simply because the realtors were the conduit through which liability flowed. *Id.* at 104. Hall and Blazer's situation is not analogous, and the circuit court correctly denied them attorney fees.

¶ 19.    On the cross-appeal, Liebovich first claims that Hall and Blazer did not prove that his house violated the setback restriction. He argues that they did not demonstrate the location of the low water line from which the setback was to be measured. The disputed term "low water line" is a part of a deed restriction; therefore, to determine its meaning a court must ascertain the intent of the parties when the deed restriction was created.[3] *See Schaefer v. Schaefer,* 72 Wis. 2d 600, 610, 241 N.W.2d 607 (1976).

¶ 20.    Liebovich argues that the term "low water line" is ambiguous and, as such, we must interpret it to favor the free use of land. *See Pietrowski v. Dufrane,* 2001 WI App 175, ¶ 7, 247 Wis. 2d 232, 634 N.W.2d 109. He makes a strong case that there is no consensus on the term's meaning generally. However, our task is not to define the term generally, but as it was understood by

[3] We therefore reject Liebovich's contention that the low water line must be determined "as of the event at issue, namely the Liebovichs building their house." The cases he cites are inapposite because they all concern the determination of a high or low water mark as the boundary between a state-owned navigable waterway and private property, and not the deed-interpretation question presented here. *See State v. Kelley,* 2001 WI 84, ¶¶ 25–26, 244 Wis. 2d 777, 629 N.W.2d 601; *Delaware ex rel. Buckson v. Pennsylvania R.R. Co.,* 244 A.2d 80, 82–84 (Del. Super. Ct. 1968), *aff'd* 267 A.2d 455 (Del. 1969); *Boothbay Harbor Condos., Inc. v. DOT,* 382 A.2d 848, 856 (Me. 1978).

the parties when they created the deed restriction. *See Schaefer*, 72 Wis. 2d at 610. In the relevant deeds, the ends of the "low water mark" are defined by proximity to a concrete monument and an iron pipe. There is no ambiguity whatsoever.

¶ 21. As to the shape of the line between its ends, Liebovich complains that the court relied on a survey prepared by Hall and Blazer's expert. This survey, in turn, relied on the low water line drawn on the survey from 1954, when the Liebovich property was divided from the Blazer property, rather than the one on the survey from 1946, when the deed restriction was first attached to Liebovich's property. But though Liebovich claims that the low water line on the earlier survey is more favorable to him because it is less concave (i.e., curves less toward the house) between the fixed points, he does not claim that using that line would take him out of violation of the 125–foot setback. The difference between the two is of no consequence.

¶ 22. Liebovich also proffers a 1978 survey that he claims shows a more accurate low water line than the one relied on by the court. This survey is not relevant at all. Again, we are seeking to ascertain what "low water line" meant to the author of the deed restriction. Given the lack of a precise and consistent *general* definition of the term, it does not matter where a different surveyor thirty years later thought the low water line was.

¶ 23. We finally reject Liebovich's argument that because determining the "low water line" would have required him to delve into the chain of title and various other documents, the term is somehow ambiguous. Liebovich's deed noted the restriction and told him where to find it; had he done so, he would have seen "low water line" defined with respect to fixed markers

on the land. This is well within the powers (and the duties) of a responsible homeowner. Liebovich's failure to exercise due diligence before building his home does not make the deed restriction ambiguous.

¶ 24.  Liebovich finally argues that even if he violated the deed restriction as written, he has obtained the right to do so by prescriptive easement. Liebovich relies on WIS. STAT. § 893.28 (2005–06):[4]

> **Prescriptive rights by adverse user. (1)** Continuous adverse use of rights in real estate of another for at least 20 years, except as provided in s. 893.29 establishes the prescriptive right to continue the use. Any person who in connection with his or her predecessor in interest has made continuous adverse use of rights in the land of another for 20 years, except as provided by s. 893.29, may commence an action to establish prescriptive rights under ch. 843.

Liebovich's argument is as follows:  the setback restriction in the deed is a "right in real estate" belonging to Hall and Blazer, "another" (or "others"). Liebovich and his predecessor "used" the right adversely for over twenty years by continually violating the setback. Thus, under the statute, they have the right to continue the use.

■■■

¶ 25.  We hold that the argument is contrary to the plain language of the statute. As Liebovich reads it, the phrase "of another" is taken to modify "rights." Though it is not grammatically impossible to read the statute this way, a much clearer way to express Liebovich's preferred meaning would be to say "rights of another in real estate." As the statute is written, it is far more

---

[4] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

natural to read "of another" to modify the adjacent "real estate," rather than the more distant "rights." That is, by continuous use, one may gain a prescriptive right in another's real estate. The real estate in which a right is gained must *belong to* another person.[5]

¶ 26. This reading is further supported by the second sentence, which permits an action to establish prescriptive rights. It speaks of adverse use of "rights in the land of another;" the presence of the definite article "the" in the phrase "the land of another" makes even more explicit that the statute is referring to *particular* land: that belonging to another person. Under WIS. STAT. § 893.28, one cannot gain adverse rights to one's own land.

¶ 27. As the amicus in this case points out, even if we were to accept that "rights in real estate of another" means "rights of another in real estate," Liebovich still could not prevail on this theory, because the right that he claims to have taken from Hall is not a right that Hall ever had. The only right that Hall ever had in Liebovich's property was to *prevent* Liebovich from building on a certain part of it. Hall had no right to *build* anything on Liebovich's land; only to keep Liebovich from doing so. As the amicus puts it, Hall had an enforcement right. It is nonsensical to say that

---

[5] The out-of-state cases Liebovich cites are not to the contrary. Each involved an adverse use against another party who was either the owner of the land at issue or had a possessory interest in it. *See Ludwig v. Gosline*, 465 A.2d 946, 947 (N.J. Super. Ct. App. Div. 1983) (easement against leaseholder); *Price v. Eastham*, 75 P.3d 1051, 1057 (Alaska 2003) (easement against one who held land for agricultural use); *Saxon Garage Corp. v. Regency East Apartment Corp.*, 748 N.Y.S.2d 231, 232 (Sup. Ct. 2002) (easement by landlord against tenant).

740

Liebovich used Hall's enforcement right by violating the deed restriction. There are doctrines that allow for violations of a restrictive covenant to render it unenforceable:waiver, estoppel, and the clean hands doctrine among them. The circuit court determined that none of them apply here, and Liebovich does not challenge that ruling. He cannot instead create a new doctrine by a strained reading of the prescriptive easement statute.

*By the Court.*—Judgment affirmed.