Gregory A. LIEBOVICH, Plaintiff-Appellant,

v.

MINNESOTA INSURANCE COMPANY and
American International Insurance Company,
Defendants-Respondents-Petitioners.

Supreme Court

*No. 2006AP405. Oral argument November 29, 2007.
—Decided July 1, 2008.*

2008 WI 75

(Also reported in 751 N.W.2d 764.)

For the defendants-respondents-petitioners there were briefs by *Michael A. Mesirow, Patti J. Kurth,* and *Kasdorf, Lewis & Swietlik, S.C.,* Milwaukee, and oral argument by *Michael A. Mesirow.*

For the plaintiff-appellant there was a brief by *Jon P. Axelrod, Megan A. Senatori, Jacob P. Westerhof,* and *DeWitt Ross & Stevens S.C.,* Madison, and oral argument by *Jon P. Axelrod.*

¶ 1. LOUIS B. BUTLER, JR., J. This case involves an insurance provider's duty to defend the holder of a broad homeowners' liability policy against claims that he built his house too close to a shoreline in violation of a restrictive covenant. Gregory A. Liebovich (Liebovich) sued his insurers, Minnesota Insurance Company and

American International Insurance Company (AIG),[1] after they refused to defend him in a lawsuit filed against Liebovich by some of his neighbors for violating a covenant with a 125–foot setback restriction. AIG filed a motion for summary judgment, which the circuit court granted. The court of appeals affirmed in part, reversed in part, and remanded, concluding in a published opinion[2] that AIG had a duty to defend Liebovich, and that AIG could have sought a judicial determination of its responsibilities if it felt the policy did not provide coverage, but instead AIG unilaterally breached its duty to defend.

¶ 2. Upon review, we agree with the court of appeals' conclusion that AIG's unilateral decision to deny liability coverage to Liebovich was a violation of its duty to defend. That duty was established by the filing of a complaint against Liebovich which, contrary to AIG's arguments, contained the requisite allegations of an occurrence, injury, and damages triggering AIG's responsibilities under the policy. Therefore, AIG's unilateral decision to deny liability coverage to Liebovich, without first turning to the well-established procedures described in *Elliott v. Donahue,* 169 Wis. 2d 310, 485 N.W.2d 403 (1992), *Newhouse v. Citizens Security Mutual Insurance Co.,* 176 Wis. 2d 824, 501 N.W.2d 1 (1993), and *Baumann v. Elliott,* 2005 WI App 186, 286

---

[1] A stipulation filed by the parties on November 17, 2005, notes that Minnesota Insurance Company and American International Insurance Co. are both members of the American International Group (AIG) Private Client Group. Both are also named as parties in this action. We will use the "AIG" designation when referring to the two companies jointly. *See also infra,* ¶ 9 n.6.

[2] *Liebovich v. Minnesota Insurance Co.,* 2007 WI App 28, 299 Wis. 2d 331, 728 N.W.2d 357.

Wis. 2d 667, 704 N.W.2d 361, and despite the allegations of an occurrence, injury, and damages in the Halls' complaint, was a breach of AIG's duty to defend Liebovich. We further conclude that the intentional acts exclusion in Liebovich's policy does not justify AIG's abandonment of its policyholder because the neighbors' complaint does not allege that Liebovich intended to harm them. Consequently, we hold that AIG had a duty to defend Liebovich and that it breached that duty. We affirm the court of appeals' decision, adding to the remand directions that the circuit court should additionally address Liebovich's indemnification claim against AIG on remand.

I

¶ 3. Liebovich and his neighbors, Stephen R. Hall, Judith K. Hall, and Cedric Blazer,[3] own property with lake frontage on the south shore of Geneva Lake. When Liebovich built his home, the Halls filed a complaint[4] against him alleging he had violated a 125–foot setback covenant deed restriction by building a portion of his new home too close to the shore of Geneva Lake.

¶ 4. The first two causes of action in the Halls' complaint allege that Liebovich had constructive and actual knowledge of the restriction, but violated it intentionally and in willful disregard of his neighbors' rights, aggrieving them and entitling them to a writ requiring removal of the portion of his home violating the restriction. The form of relief sought for the first two causes of action includes a declaration that the

---

[3] We refer to all three collectively as "the Halls."

[4] In this opinion, we refer to the second amended complaint filed by the Halls in their action against Liebovich, which incorporates by reference a previous amended complaint.

setback restriction is valid, enforceable, and applicable to Liebovich's property; an injunction requiring compliance with the restriction; a writ of mandamus "directing Liebovich to take all necessary action, including, but not limited to, razing and removal of that portion of the single-family dwelling located on the Liebovich property which violates the 125 foot building setback restriction"; repayment of legal costs and disbursements; judgment under Wis. Stat. § 844.20(1) and (2) (2003–04),[5] including injunctive relief and damages; and other relief the court deems just or equitable.

¶ 5. The third cause of action requests reformation of a 1968 affidavit and notice of covenant restrictions recorded with the register of deeds along with the deed for Liebovich's property. The Halls claim that the affidavit was executed to give notice of the 125–foot setback covenant restriction, but that it mistakenly described Liebovich's property as containing a "Form 2" restriction which *allowed* construction within 125 feet of the Geneva Lake shore at the low water line, when in fact, the deed accompanying the property contained the "Form 1" restriction prohibiting any structures less than 125 feet from the shore. Along with requesting reformation, the third cause of action requests that the reformed version of the affidavit be recorded with the

---

[5] Wisconsin Stat. § 844.20 provides:

(1) The judgment shall award the relief, legal or equitable, to which the plaintiff is entitled specifically, and without limitation, interference, encroachment, physical injury or waste may be enjoined; damages may be awarded separately, or in addition.

(2) Abatement by the sheriff of any nuisance, structure or encroachment may be ordered by the judgment.

All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

Register of Deeds for Walworth County, reimbursement for costs and disbursements, and other relief the court deems just and equitable.

¶ 6. Liebovich is the holder of a "Private Client Group" homeowner's insurance policy (PCG policy), the relevant language of which is discussed later in this opinion. Liebovich asked AIG to defend and indemnify him in the lawsuit, based on the liability provisions of the PCG policy. In response, AIG sent a denial letter stating that it was refusing coverage because the Halls' second amended complaint alleges that Liebovich's conduct was intentional and in willful disregard of his neighbors' rights. As such, the letter stated, coverage is precluded by the policy's "intentional acts" exclusion, and by what AIG described as the lack of a request for damages in the Halls' complaint.

¶ 7. The Halls won their lawsuit and Liebovich was ordered to pay them $10,000 in damages along with statutory costs, disbursements, and interest. He was also enjoined from further violations of the covenant and from building certain additions or rebuilding the present encroachment if it is ever torn down. However, the court stopped short of granting an injunction requiring Liebovich to tear down the part of the house violating the covenant, adding a handwritten note to its order that "[i]t is further ordered, adjudged, and decreed that it would be inequitable to . . . Liebovich to grant the injunctive relief requested."

¶ 8. Both the Halls and Liebovich appealed. The court of appeals affirmed the circuit court's decision, and this court denied the Halls' petition for review. *Hall v. Liebovich Living Trust,* 2007 WI App 112, ¶ 2, 300 Wis. 2d 725, 731 N.W.2d 649, *review denied,* 2007 WI 114, 302 Wis. 2d 106, 737 N.W.2d 432 (unpublished table decision).

¶ 9. On August 24, 2005, Liebovich filed suit against AIG[6] for the company's failure to defend and indemnify him, alleging breach of AIG's contractual obligations to him and bad faith. Both parties moved for summary judgment. In its motion, AIG argued that no coverage exists under the PCG policy for the causes of action alleged within the four corners of the Halls' complaint. Liebovich responded that AIG had breached its duty to defend him and failed to follow the well-established procedures allowing insurance companies to seek a judicial determination about contested coverage rather than denying coverage without such a determination.

¶ 10. At a January 6, 2006, hearing, the circuit court, Honorable Michael S. Gibbs presiding, concluded that AIG did not breach a duty to defend because the Halls' allegation of being aggrieved does not rise to the level of the type of injury required for coverage. The court further concluded that the Halls did not allege damages, and that Liebovich's intent to build his house made the policy's intentional acts exclusion applicable. The court granted AIG's motion for summary judgment and denied Liebovich's motion for summary judgment.

¶ 11. Liebovich appealed. The court of appeals affirmed the dismissal of Liebovich's bad faith claim, while reversing the circuit court's conclusion that AIG did not have a duty to defend Liebovich and remanding for calculation of damages, costs, and fees. *Liebovich v.*

[6] The original complaint listed only Minnesota Insurance Company as the defendant. On November 17, 2005, the parties stipulated to the addition of American International Insurance Company as a co-defendant. The stipulation stated that the previously filed pleadings were deemed to apply to both Minnesota Insurance Company and American International Insurance Company. *See supra,* ¶ 1 n.1.

*Minnesota Ins. Co.,* 2007 WI App 28, ¶¶ 1, 17–18, 299 Wis. 2d 331, 728 N.W.2d 357.

¶ 12. In its analysis of the duty to defend issue, the court of appeals rejected AIG's arguments that the Halls' complaint does not allege a personal injury or damages. *Id.*, ¶¶ 9–11. The court ruled that the implicit allegation of a wrongful entry and explicit allegation of being aggrieved were sufficient to satisfy the personal injury requirement, and that damages were explicitly claimed along with the facts giving rise to those damages. *Id.* The court also rejected AIG's argument that there was no occurrence alleged, explaining that the PCG policy does not limit the definition of "occurrence" to accidents, but also includes offenses, and that AIG failed to establish why Liebovich's conduct was not such an offense. *Id.*, ¶ 12. Finally, the court rejected AIG's invocation of the PCG policy's intentional act exclusion, concluding that the exclusion applies only when the insured intends or should have known that some harm would follow from his actions, which was not the case here. *Id.*, ¶¶ 13–17. The court concluded on these grounds that AIG had a duty to defend Liebovich and had breached that duty. *Id.*, ¶ 17.

¶ 13. AIG filed a petition for review, and we accepted review. Our review is limited to a determination of whether AIG had, and breached, a duty to defend Liebovich in the lawsuit filed against him by the Halls.[7] We conclude that the four corners of the Halls'

---

[7] Neither lower court addressed Liebovich's indemnification claim, and therefore we do not reach the issue of indemnification either. Because the issue is still viable upon reversal of the circuit court's order and judgment but requires a trial for resolution, we include in our remand directions for the circuit court to address the indemnification issue along with complying with the other directions from this court.

complaint contain allegations of the type of injury, damages, and occurrence required for coverage under Liebovich's policy and that the intentional acts exclusion in the policy does not bar coverage. We further conclude that AIG had a duty to defend Liebovich, and AIG breached that duty.

II

¶ 14. We review summary judgment decisions de novo, applying the same methodology as the circuit court and the court of appeals. *See Green Springs Farms v. Kersten,* 136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987); Wis. Stat. § 802.08(2). A motion for summary judgment may be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Wis. Stat. § 802.08(2).

¶ 15. In this case, neither party claims there is a genuine issue of material fact. The issue before us is the applicability of Wisconsin's law concerning an insurance company's duty to defend to the facts of this case. Whether the circuit court correctly interpreted and applied the law pertaining to an insurer's duty to defend is an issue we review de novo. *See Welin v. Am. Family Mut. Ins. Co.,* 2006 WI 81, ¶ 16, 292 Wis. 2d 73, 717 N.W.2d 690.

¶ 16. The procedures and standard of review applicable in duty to defend cases are well-established. "The duty to defend is triggered by the allegations

contained within the four corners of the complaint."
*Newhouse,* 176 Wis. 2d at 835 (citing *Elliott,* 169
Wis. 2d at 320–21; *Grieb v. Citizens Cas. Co.,* 33 Wis. 2d
552, 557–58, 148 N.W.2d 103 (1967)). An insurer has a
duty to defend when there are allegations in a com-
plaint that, if proven, "would give rise to recovery under
the terms and conditions of the insurance policy. . . .
The duty of defense depends on the nature of the claim
and has nothing to do with the merits of the claim."
*Elliott,* 169 Wis. 2d at 320–21 (citations omitted).

¶ 17. The interpretation of an insurance policy is
ordinarily a question of law, which we review de novo.
*See Welin,* 292 Wis. 2d 73, ¶ 16. We will interpret a
policy's language so that it comports with the common
and ordinary meaning it would have in the mind of a
reasonable lay person in the position of the insured.
*Cieslewicz v. Mut. Serv. Cas. Ins. Co.,* 84 Wis. 2d 91,
97–98, 267 N.W.2d 595 (1978). If the language of a
policy is unambiguous, and its terms plain on their face,
"the policy should not be rewritten by construction to
bind the insurer to a risk it was unwilling to cover, and
for which it was not paid." *Garriguenc v. Love,* 67
Wis. 2d 130, 135, 226 N.W.2d 414 (1975).

¶ 18. However, if the language of a policy is am-
biguous, susceptible of more than one reasonable inter-
pretation, we will construe it narrowly, against the
insurer, and in favor of coverage. *Cardinal v. Leader
Nat'l Ins. Co.,* 166 Wis. 2d 375, 382, 480 N.W.2d 1
(1992). Consequently, any doubts about the duty to
defend must be resolved in favor of the insured. *Elliott,*
169 Wis. 2d at 321.

¶ 19. With these principles in mind, we will con-
fine our inquiry into AIG's alleged duty to defend to the

four corners of the Halls' complaint, read in conjunction with the PCG insurance policy issued by AIG to Liebovich.

## III

¶ 20. AIG raises three primary issues, which we will address separately: (1) whether the Halls allege within the four corners of the complaint a personal injury or occurrence within the meaning of Liebovich's PCG policy; (2) whether the complaint alleges damages; and (3) whether coverage is otherwise precluded by the policy's intentional acts exclusion in Liebovich's PCG policy.

## A

¶ 21. AIG's arguments that the Halls' complaint does not allege a "personal injury" and that it does not allege an "occurrence" as defined by Liebovich's PCG policy are interrelated. Because AIG premises its claim that there is no occurrence alleged in the Halls' complaint upon its parallel claim that the complaint does not allege a personal injury, the latter issue is dispositive of the former issue. We therefore address the two issues together.

¶ 22. The general liability coverage provision of Liebovich's PCG policy provides in relevant part:

A. *Insuring Agreement*

> We will pay, on your behalf, damages an insured person is legally obligated to pay for personal injury or property damage caused by an occurrence covered by this policy anywhere in the world, unless stated otherwise or an exclusion applies. '

> . . . .

767

### C. *Defense Coverage and Claim Expense*

> We will pay the costs to defend an insured person against any suit seeking covered damages for personal injury or property damage, even if the suit is false, fraudulent or groundless.

¶ 23. The PCG policy proceeds to define "occurrence" as including both accidents and offenses. The inclusion of non-accidental offenses along with accidents in the definition of occurrence renders the PCG policy's coverage significantly broader than that provided in standard policies such as Commercial General Liability (CGL) policies. Standard CGL policies provide general coverage only for those occurrences which can be classified as accidents. *See Everson v. Lorenz*, 2005 WI 51, ¶¶ 12, 15, 21–22, 280 Wis. 2d 1, 695 N.W.2d 298; *Doyle v. Engelke*, 219 Wis. 2d 277, 282, 289–90, 580 N.W.2d 245 (1998); I Susan J. Miller & Philip Lefebvre, *Miller's Standard Insurance Policies Annotated*, 419 (4th ed. 1994).

¶ 24. The inclusion of non-accidental offenses along with accidents in Liebovich's PCG policy's definition of "occurrence" is just one example of the significantly broader coverage provided by that policy. The PCG policy also defines "personal injury" in the following comparatively broad terms:

> *Personal injury means injury,* including bodily injury or mental harm arising out of any of the following acts:
>
> a. Bodily injury;
>
> b. Wrongful detention, false imprisonment or false arrest;
>
> c. Shock, emotional distress, mental injury;

 d. Invasion of privacy;

 e. Defamation, libel or slander;

 f. Malicious prosecution;

 g. Wrongful entry or eviction; or

 h. Assault and battery when committed with the intent of protecting persons.

(Emphasis added.)

¶ 25. AIG and Liebovich offer different interpretations of the phrase "injury, including bodily injury or mental harm arising out of any of the following acts." While Liebovich, in essence, interprets the phrase as meaning "injury, including but not limited to," AIG interprets it as "injury, including and limited to." Under AIG's interpretation, "injury" is therefore synonymous with "bodily injury or mental harm arising out of any of the following acts. . . ."

¶ 26. We conclude that AIG's interpretation of this provision does not comport with the unambiguous text of the provision. The policy's definition of "personal injury" is not, on its face or otherwise, limited to only those injuries listed. The presence of a comma and the word "including" in the phrase "injury, including" indicates that the word "including" is not meant to reference an exhaustive list.

¶ 27. This plain text meaning of the phrase "injury, including" is reinforced by reading Liebovich's policy as a whole, as we must in insurance interpretation cases. *See Laabs v. Chicago Title Ins. Co.,* 72 Wis. 2d 503, 510, 241 N.W.2d 434 (1976). In Liebovich's policy, the definition of "personal injury" is not the only

provision that employs a comma followed by the word "including" denoting a non-exhaustive list. The policy's definition of "occurrence" is similarly structured:

a. A loss or an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which occurs during the Policy Period and results in personal injury or property damages; or

b. An offense, including a series of related offenses, committed during the Policy Period that results in personal injury or property damage.

For the sake of comparison, we observe that AIG does not argue that the first half of the "occurrence" definition, describing "[a] loss or an accident, including continuous or repeated exposure to substantially the same general harmful conditions . . ." limits coverage to *only* those accidents in the form of continuous or repeated exposure to harmful conditions. Nor does AIG argue that the second half of the definition, describing "[a]n offense, including a series of related offenses," limits coverage to *only* those offenses which occur as part of a series of related offenses.

¶ 28. The reason AIG does not make a similar argument regarding the meaning of occurrence is likely because these provisions, using similar "including" clauses as that found in the "personal injury" definition, clearly do not limit the meaning of the words being defined to those examples that follow the word "including." From the text of the similarly structured definition of "personal injury" in Liebovich's PCG policy, it is equally evident that the policy uses the word "including" in the personal injury definition in a similar inclusive,

not exclusive, manner, merely denoting some types of covered acts without purporting to set forth an exhaustive list.

¶ 29. The broad nature of the PCG policy further illustrates that the phrase, "injury, including" in the definition of "personal injury" is not synonymous with the phrase "injury including *and limited to,*" or "only those injuries which arise out of the following acts. . . ." As we have explained, the policy in this case is substantially broader in scope than standard CGL policies. This is true not just of the PCG policy's comparatively broader definition of occurrence, but also of its more expansive definition of personal injury.

¶ 30. Standard CGL policies generally define personal injury as "injury, other than 'bodily injury,' arising out of one or more of the following offenses." I Susan J. Miller & Philip Lefebvre, *Miller's Standard Insurance Policies Annotated,* 419 (4th ed. 1994). In contrast, Liebovich's PCG policy defines personal injury as "injury, including bodily or mental harm arising out of any of the following acts. . . ." Viewed side-by-side, the different personal injury definitions reveal the comparatively broader language of PCG policies:

| CGL Definition: | PCG Definition: |
| --- | --- |
| Injury, other than bodily injury, arising out of one or more of the following offenses. | Injury, including bodily or mental harm arising out of any of the following acts . . . . |

Specifically, the above comparison of the text of CGL and PCG definitions of personal injury indicates that the comparative lack of a comma in Liebovich's PCG policy coupled with the word "including" precludes rea-

sonably reading the list of acts after the word "including" as an exclusive list; even injuries not listed are potentially covered.

¶ 31. Not only is the placement of a comma after the word "injury" in CGL policies, in contrast with in PCG policies, significant for the reasons we have just discussed, but there is another significant difference between the use of commas in standard CGL policies and in Liebovich's PCG policy. As the side-by-side language in the previous paragraph shows, another difference in the use of commas that affects the meaning of the personal injury definition in each type of policy is the difference between the *absence* of a comma before the phrase "arising out of" in the Liebovich policy, and the contrasting *presence* of such a comma in the standard CGL policy. Under a plain text reading of CGL policy's language that takes into account the function of the comma, the phrase "arising out of" clearly modifies "injury" in CGL policies. Under a plain text reading of Liebovich's PCG policy, in contrast, the phrase "arising out of" modifies the more narrow category of "bodily or mental harm" in the PCG policy. The *absence* of a comma before the phrase "arising out of" in the Liebovich policy indicates that the PCG policy, unlike a CGL policy, does not require an injury be in the form of bodily or mental harm arising out of specifically listed acts in order to be a covered injury.[8]

---

[8] Another difference revealed by a side-by-side comparison of the CGL and PCG policies' personal injury definitions is that CGL policies explicitly exclude bodily injury, while the PCG policy explicitly includes bodily injury. However, that distinction is not pertinent to our present analysis, other than to provide another illustration of the comparatively broad definition of "personal injury" in PCG policies.

¶ 32. Finally, as we have explained, insurance policies are construed strictly in favor of coverage, and ambiguities are to be construed against the drafter. *See Cardinal,* 166 Wis. 2d at 382. As such, while we conclude that Liebovich's interpretation of the PCG policy's definition of "injury" is reasonable, comporting with the text of the policy and the commonly understood inclusive meaning of "injury," even if AIG's interpretation were reasonable as well, we would still construe the policy in favor of coverage. When there are two competing interpretations of a policy which are conflicting but both are reasonable, we defer to the interpretation of the insured, not the drafter. *See id.*

¶ 33. There are two particular provisions of the Halls' complaint that may reasonably be construed as alleging injury. Paragraph 27 of the complaint alleges that the house Liebovich built "violates the 125 foot building setback restriction . . . . Hall and Blazer are aggrieved by Liebovich's violation of the building setback restriction." Paragraph 29 alleges that the construction violating the setback restriction "has interfered with the interests of Hall and Blazer in and to their neighboring real property."

¶ 34. In support of his argument that the "aggrieved" language of paragraph 27 is sufficient to satisfy the injury requirement of his PCG policy, Liebovich cites *United States v. Security Management Co.,* 96 F.3d 260 (7th Cir. 1996). In that case, the court found coverage where the complaints alleged being "aggrieved." *Id.* at 262, 268. The court held that "since the complaints requested an award of 'such damages as would fully compensate aggrieved persons for damages caused by the defendants' discriminatory conduct,' we

773

conclude that the complaints should be impliedly read as requesting compensation for mental injury." *Id.* at 268. Liebovich argues that the same principle applies in this case.

¶ 35. In reply, AIG distinguishes *Security Management* as involving an allegation of discrimination. AIG correctly points out that in *Security Management,* the court explained that a complaint need not expressly allege emotional harm, particularly in cases involving racial discrimination, which is presumptively degrading and humiliating. *Id.* AIG appropriately notes that discrimination is generally, by its nature, more likely to be emotionally damaging than building a house too close to a lakefront.

¶ 36. However, we disagree with the implication of AIG's arguments that the allegation of being "aggrieved" can never denote injury in contexts of harms such as covenant breaches. AIG argues that "aggrieved" means no more than a general invocation of legal standing, but this argument underscores the symbiotic relationship between being "aggrieved" and being "injured": it is through the demonstration of injury that standing is conferred. For example, it is well established that for purposes of establishing standing to appeal a judgment, an "aggrieved party" is defined in part as "one having an interest . . . which is injuriously affected by the judgment." *See, e.g., Muriel K. v. Milwaukee County,* 2002 WI 27, ¶ 16, 251 Wis. 2d 10, 640 N.W.2d 773; *Jindra v. Diederich Flooring,* 181 Wis. 2d 579, 611, 511 N.W.2d 855 (1994); *Pasch v. DOR,* 58 Wis. 2d 346, 357, 206 N.W.2d 157 (1973); *Greenfield v. Joint County School Comm.,* 271 Wis. 442, 447, 73 N.W.2d 580 (1955).

¶ 37. Cases addressing standing are not the only examples of the nearly synonymous relationship of the terms "aggrieved" and "injured." On occasion, we have found it useful to turn to the dictionary to ascertain common and ordinary meanings of words. *See, e.g., State v. Polashek,* 2002 WI 74, ¶ 19, 253 Wis. 2d 527, 646 N.W.2d 330. In this case, we observe that the Webster's Dictionary definition of "aggrieve" includes the synonymous phrase "to inflict injury upon." *Webster's Third New International Dictionary* 41 (3d ed. 1986). This definition of "aggrieved" as a word that is interchangeable with "injured" has also been commonly employed in our case law addressing issues beyond standing. *See Lestina v. West Bend Mut. Ins. Co.,* 176 Wis. 2d 901, 911, 501 N.W.2d 28 (1993)(observing "a judicial trend toward holding sports-related *injuries* actionable only 'if the *aggrieved* person demonstrates gross negligence or reckless disregard by the defendant' ")(citation omitted)(emphasis added); *Rimes v. State Farm Mut. Auto. Ins. Co.,* 106 Wis. 2d 263, 275, 316 N.W.2d 348 (1982)("Under Wisconsin law the test of wholeness depends upon whether the insured has been completely compensated for all the elements of damages . . . . The *injured or aggrieved party* is not made whole unless all his damages arising out of the tort have been fully compensated.") (emphasis added); *Village of Niagara v. Town of Niagara,* 209 Wis. 529, 533, 245 N.W. 699 (1932)(describing "remedies for an *aggrieved or injured* municipality entitled to an apportionment of taxes")(emphasis added).

¶ 38. In addition, a violation of rights, as alleged by the Halls' complaint, may constitute an injury. Turning to the dictionary for guidance, we observe that a common definition of injury is "an act that damages, harms, or hurts . . .[;] a violation of another's rights for which the law allows an action to recover damages . . . ." *Webster's Third New International Dictionary* 1164 (3d

ed. 1986). Black's Law Dictionary similarly defines "injury" as follows:

> 1. The violation of another's legal right, for which the law provides a remedy; a wrong or injustice. See WRONG. 2. Scots law. Anything said or done in breach of a duty not to do it, if harm results to another in person, character, or property. Injuries are divided into real injuries (such as wounding) and verbal injuries (such as slander). They may be criminal wrongs (as with assault) or civil wrongs (as with defamation). 3. Any harm or damage. Some authorities distinguish harm from injury, holding that while harm denotes any personal loss or detriment, injury involves an actionable invasion of a legally protected interest.

*Black's Law Dictionary* 801 (8th ed. 2004). In this case, the Halls' complaint clearly alleges a violation of their interests and rights, a breach of a covenant resulting in harm, and an actionable invasion of a legally protected interest. As such, the complaint alleges "injury" within the dictionary meaning of that word.

¶ 39. In this case, the Halls complained not just of being aggrieved generally, but also of interference with their property interests specifically. The Halls' allegation of property interest violations is made explicitly through their claim of interference with their property interests and implicitly by reference to the restrictive covenant breach. However, AIG appears to argue that the only types of property rights violations covered by the PCG policy are eviction and wrongful entry claims. We disagree. Nothing in the text of the policy precludes injuries that include other violations of property interests from being covered as well.[9]

---

[9] While we do not definitely establish the contours of the full range of intrusions into property constituting covered injuries, we note that Wis. Stat. § 844.01(2), which defines

¶ 40. Wisconsin is a notice pleading state. *See* Wis. Stat. § 802.02. We have explained that under the notice pleading requirements set forth by § 802.02(1)(a) and (6), "a complaint must simply contain '[a] short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief[,]' " and that such claims must be "liberally 'construed [so] as to do substantial justice.' " *Doe v. Archdiocese of Milwaukee*, 2005 WI 123, ¶ 35, 284 Wis. 2d 307, 700 N.W.2d 180 (citations omitted). Because the exact form of injury suffered need not be spelled out in a complaint under the rules of notice pleading, the Halls' allegations that Liebovich "interfered with [their] interest" and that they were "aggrieved by" his actions are sufficient to allege injury for the purpose of triggering a duty to defend.

¶ 41. Having determined that the Halls' complaint alleges an injury covered by Liebovich's PCG policy, we also conclude that the complaint alleges an occurrence, as required for insurance coverage. AIG argues that there is no occurrence alleged because there is no allegation of personal injury. This argument is merely a repackaging of AIG's contention that the Halls' complaint does not allege an injury. We have

---

physical injury to real property, explains that "[p]hysical injury includes unprivileged intrusions and encroachments; the injury may be surface, subsurface or suprasurface; the injury may arise from activities on the plaintiff's property, or from activities outside the plaintiff's property which affect plaintiff's property." Although Liebovich's neighbors did not bring a claim under this statute, the statutory language helps illustrate that their complaint alleges a physical injury to real property, along with other general injuries.

already discarded the argument that the Halls' complaint does not allege an injury. AIG fails to explain why, once we conclude that the Halls' complaint alleges an injury caused by Liebovich's covenant violation, there is no occurrence alleged within the meaning of Liebovich's PCG policy.

B

¶ 42. We next address AIG's claim that "the Halls' complaint sought general equitable relief, not monetary damages." While conceding that the complaint's ad damnum clause does contain a request for damages, AIG appears to argue that because the complaint also requests equitable relief, the damages sought were not "damages" as defined by AIG's policy, which defines "damages" as "the sum required to satisfy a claim, whether settled or agreed to in writing by us or resolved by judicial procedure."

¶ 43. Liebovich describes as incredible AIG's assertion that a complaint which explicitly states "Plaintiffs request . . . damages" does not seek damages. Repeating the rhetorical question posed by the court of appeals, Liebovich asks, "for where but the ad damnum clause would a court look to see whether damages were requested?" Liebovich argues that the court of appeals properly observed that an insurer may not rely solely on the "equitable relief" and "damages" labels attached to a complaint to decide whether coverage exists. *Liebovich,* 299 Wis. 2d 331, ¶ 9 (citing *Johnson Controls, Inc. v. Employers Ins. of Wausau,* 2003 WI 108, ¶ 44, 264 Wis. 2d 60, 665 N.W.2d 257, *cert. denied,* 541 U.S. 1027 (2004)).

¶ 44. We agree. AIG's argument that damages are not claimed in the Halls' complaint fails, due to the clear request for damages in the complaint's ad damnum clause that corresponds with injuries claimed elsewhere in the Halls' complaint. AIG cites *Midway Motor Lodge of Brookfield v. Hartford Insurance Group,* 226 Wis. 2d 23, 35–36, 593 N.W.2d 852 (Ct. App. 1999), for the proposition that merely mentioning "damages" in the ad damnum clause is not enough to find that the complaint states a claim for damages. However, *Midway Motor Lodge* simply stands for the proposition that in order to constitute a cause of action, the pleading must allege "an actual loss or damage as a result of the injury." *Id.* at 35. In that case, Midway Motor Lodge failed to plead what loss or damage it suffered as a result of the breach of duty that had occurred. *Id.*

¶ 45. *Midway Motor Lodge* has been clarified by *Baumann,* 286 Wis. 2d 667, ¶¶ 15–18. In *Baumann,* the court of appeals explained that the reason the court in *Midway Motor Lodge* found the allegation of damages in the ad damnum clause in that case insufficient was because the basis for recovery, loss of use of tangible property, had not been pled with specificity and, therefore, "the rest of the complaint contained no allegations that would support the conclusion that the plaintiff had suffered incidental and consequential damages." *Baumann,* 286 Wis. 2d 667, ¶ 17. The *Baumann* court further explained that while "the prayer for relief does not cure an otherwise insufficient pleading, it is nonetheless a relevant portion of the pleading that 'can be of value to clarify and support the pleading's allegations.' " *Id.,* ¶ 18 (citation omitted). Consequently, the court held that "we may rely on the ad damnum clause to clarify the allegations set forth in the remainder of the complaint." *Id.*

¶ 46. We concur with the *Baumann* court's description of *Midway Motor Lodge.* The latter case involved a claim for an improperly installed sewer system, and the court concluded that no facts were alleged supporting a claim for injury in the form of property damage. *Midway Motor Lodge,* 226 Wis. 2d at 32–36. The complaint alleged only that there was a problem with the system, not how that problem affected the plaintiffs. *Id.* at 34–35. The complaint described an injury to the sewer system from negligent construction rather than an injury to the plaintiffs themselves, alleging that "[t]he negligent actions and omissions of Hunzinger were a proximate cause of the failure of the underground sewer system." *Id.* at 28.

¶ 47. Here, in contrast with the plaintiffs in *Midway Motor Lodge,* the Halls did allege injuries in their complaint, as we have explained. The complaint specifically alleges that the Halls were aggrieved by Liebovich's violation of the setback restriction, and that the violation interfered with the Halls' interests in and to their neighboring real property. Because we have concluded that the Halls' complaint sufficiently alleges injuries, indicates that they suffered actual damage or loss, and specifically requests a damage award to compensate them for such injuries and loss, we reject AIG's argument that the complaint does not allege damages for purposes of insurance coverage.

C

¶ 48. Finally, AIG invokes the intentional acts exclusion of Liebovich's PCG policy, which provides:

E. *Exclusions*

This policy does not provide coverage for liability, defense costs or any other cost or expense for:

. . . .

19. Personal Injury or Property Damage resulting from any criminal, willful or malicious act or omission by any person. We also will not cover claims for acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, property damage or personal injury. This exclusion applies even if the injury or damage is of a different kind or degree, or is sustained by a different person, than expected or intended. This exclusion does not apply to bodily injury if the insured person acted with reasonable force to protect any person.

AIG argues that this exclusion precludes coverage in this case because the Halls' complaint alleges actual and constructive knowledge of the setback covenant, as well as conduct which was intentional and in willful disregard of his neighbors' rights.

¶ 49. AIG maintains that "Liebovich's construction of his home was a consequence that he certainly intended. As a result, any claims resulting from this intentional act are precluded." While conceding that Wisconsin courts have interpreted intentional act exclusions as requiring intent to injure, not just intent to act, AIG points out that intent to injure may be inferred "if the degree of certainty that the conduct will cause injury is sufficiently great to justify inferring intent to injure as a matter of law," quoting *Loveridge v. Chartier*, 161 Wis. 2d 150, 169, 468 N.W.2d 146 (1991). Such is the case here, AIG argues, because any harm in this case was guaranteed by Liebovich's decision to build his home in violation of the 125–foot setback covenant.

¶ 50. We disagree, and conclude that the intentional acts exclusion is inapplicable to this case for several reasons.

781

¶ 51. First, we observe that the PCG policy's general coverage of intentional offenses as well as accidents arguably renders its "intentional acts" exclusion ambiguous.[10] While neither the text of the main coverage clause of Liebovich's PCG policy nor the intentional acts exclusion, viewed in isolation, is ambiguous, reading them in conjunction with one another reveals some ambiguity arising from the apparent contradiction between the main coverage clause's coverage of non-accidental (i.e., intentional) offenses, and the policy's exclusion of intentional acts.

> Ambiguity in an insurance policy may arise in different ways. First, the language of the disputed provision may be ambiguous because the import of the words is uncertain or the impact of the words is uncertain with respect to unusual facts. Second, a provision that is unambiguous when viewed in isolation may become ambiguous when considered in the context of the entire policy.

*Teschendorf v. State Farm Ins. Cos.,* 2006 WI 89, ¶ 74, 293 Wis. 2d 123, 717 N.W.2d 258 (Prosser, J., concurring)(citing *Folkman v. Quamme,* 2003 WI 116, ¶ 13, 264 Wis. 2d 617, 665 N.W.2d 857). This case falls into the latter category.

¶ 52. However, we have resolved the ambiguous meaning of intentional acts exclusions in previous

---

[10] On this point, Liebovich points out that AIG's argument to the contrary conflicts with an argument made by AIG itself in a previous case, *Kitsap County v. Allstate Insurance Co.,* 964 P.2d 1173 (Wash. 1998). In that case, Liebovich observes, AIG and other insurers argued that "because the term 'offenses' is used in the personal coverage provisions, it is axiomatic that . . . intentional acts are covered." *Id.* at 1181.

cases, in which we have explained that intentional act exclusions preclude coverage where some alleged harm or injury, in addition to the act causing injury, was intended by or should have been anticipated by the insured. *See Loveridge,* 161 Wis. 2d at 168–69; *Raby v. Moe,* 153 Wis. 2d 101, 110–11, 450 N.W.2d 452 (1990). In *Raby,* this court explained that in order for such an intentional acts exclusion to preclude coverage, "[f]irst, the insured must intentionally act, and, second, the insured must intend some injury or harm to follow from that act." *Raby,* 153 Wis. 2d at 110 (citing *Pachucki v. Republic Ins. Co.,* 89 Wis. 2d 703, 710, 278 N.W.2d 898 (1979)). Therefore, in interpreting and applying an intentional acts exclusion clause, once we "hav[e] concluded that [an insured's] intent to act is established . . . we turn to the question of whether [the insured] intended some injury or harm to follow from his intentional act." *Raby,* 153 Wis. 2d at 110–11.

¶ 53. In addition, interpreting the intentional acts exclusion as requiring an allegation of intent to injure, not just to act, is the interpretation offered by Liebovich. Due to the ambiguous nature of the distinction in his policy between non-accidental offenses (which are covered) and "intentional acts" (which aren't), we defer to Liebovich's reasonable interpretation. *See Elliott,* 169 Wis. 2d at 321 ("If there is any doubt about the duty to defend, it must be resolved in favor of the insured.").

¶ 54. Furthermore, we agree with Liebovich that intent to build a house in a manner that violates a covenant is not the same as intent to harm. Intent to harm was not alleged by the Halls' complaint. The allegation that Liebovich's violation of the covenant was intentional and in willful disregard of his neighbors'

rights does not equate to an allegation of intentional harm. Rather, the "intentional violation" language can reasonably be interpreted as describing a volitional construction that violated the covenant, but not intent to harm anyone in the process. Consequently, because there is no allegation that Liebovich intended not just to build a house, but also for some harm or injury to result, the intentional act exclusion does not apply.

■■

¶ 55. As a final note, we emphasize the preferred process for insurers to resolve duty–to-defend disputes. As we have explained, it is well established that an insurer may request a bifurcated trial on the issue of coverage while moving to stay proceedings on the merits of the liability action until the issue of coverage is resolved. *Newhouse,* 176 Wis. 2d at 836 (citing *Elliott,* 169 Wis. 2d at 318). "When this procedure is followed," we explained, "the insurance company runs no risk of breaching its duty to defend." *Newhouse,* 176 Wis. 2d at 836. In addition to the *Elliott/Newhouse* procedure, insurers may raise the coverage issue in other ways, such as seeking a declaratory ruling or agreeing to provide a defense under a reservation of rights. *See Baumann,* 286 Wis. 2d 667, ¶ 8. While these procedures are not absolute requirements, we strongly encourage insurers wishing to contest liability coverage to avail themselves of one of these procedures rather than unilaterally refuse to defend. A unilateral refusal to defend without first attempting to seek judicial support for that refusal can result in otherwise avoidable expenses and efforts to litigants and courts, deprive insureds of their contracted-for protections, and estop insurers from being able to further challenge coverage.

## IV

¶ 56. In sum, we conclude that AIG's unilateral decision to deny liability coverage to Liebovich, without first turning to the well-established procedures described in *Elliott, Newhouse,* and *Baumann,* and despite the allegations of an occurrence, injury and damages in the Halls' complaint, was a breach of AIG's duty to defend Liebovich. We conclude the intentional acts exclusion in Liebovich's PCG policy did not justify AIG abandoning its policyholder because the Halls' complaint did not allege that Liebovich intended to harm them. To the extent there is any ambiguity about the PCG policy's coverage of the claims against Liebovich, such ambiguities are resolved in favor of liability coverage. Consequently, we hold that AIG had a duty to defend Liebovich and that it breached that duty. We affirm the court of appeals' decision, adding to the court of appeals' remand directions that the circuit court should additionally address Liebovich's indemnification claim.

*By the Court.*—The decision of the court of appeals is affirmed and modified, and, as modified, the cause is remanded to the circuit court.

¶ 57. ANNETTE KINGSLAND ZIEGLER, J., did not participate.