KILGUST HEATING DIVISION OF WOLFF, KUBLY & HIRSIG, INC., Respondent, v. KEMP and others, Appellants.

*No. 37 (1974). Submitted under sec. (Rule) 251.54 October 2, 1975.
—Decided November 25, 1975.*
(Also reported in 235 N. W. 2d 292.)

For the appellants the cause was submitted on the brief of *Charles P. Dykman* and *Dykman Law Offices,* all of Madison.

For the respondent the cause was submitted on the brief of *Ross, Stevens, Pick & Ross, S. C.,* attorneys, and *Frank A. Ross, Jr.,* and *Julie K. Mitby* of counsel, all of Madison.

DAY, J.  The principal issue raised on this appeal is whether or not there was sufficient evidence that materials furnished by the lienholder were incorporated into or used on the defendants' premises so as to give rise to a lienable claim.  Other questions concern the prejudgment interest allowed by the trial court.

We conclude that there was a lienable claim and that the judgment of foreclosure should be affirmed, but that the rate of interest allowed should be modified.

The Kilgust Heating Division of Wolff, Kubly & Hirsig, Inc., plaintiff-respondent ("Kilgust"), contracted with O. T. Havey, d/b/a Havey Electric Company, to supply certain sheet metal materials and work in connection with the construction of the "Walnut Grove" (later renamed "Greenbriar") apartment complex in Madison during 1972.  The defendants-appellants Kemp and Fisher ("Fisher"),[1] owners of the Walnut Grove apartments, allegedly paid Havey for its work on the project including the materials supplied by Kilgust, but Kilgust was never paid the sum of $1,325.72 by Havey.  After proper notice, this action was brought to foreclose the construction lien against the real estate as provided by ch. 289, Stats.

The only dispute is whether the materials supplied by Kilgust to Havey during the construction of Walnut Grove were all intended for that project, or whether Kilgust might have simultaneously been supplying Havey with materials for some other project.  At the trial Kilgust produced two witnesses, David Scheid, Kilgust's office manager, and Russell Hainstock, manager of Havey Electric Company.  Mr. Scheid testified on the basis of "job records" showing Kilgust's orders from Havey for the period between June and November, 1972, stating that some, but not all, of the job orders indicate that the

---

[1] Fisher subsequently became sole owner of the property.  The other defendant, First Wisconsin National Bank, was named as the mortgagee of the property, and was not represented at the trial.

goods ordered were specifically intended for the Walnut Grove project. However, Scheid testified that he believed the only work being done by Kilgust for Havey at that time was in connection with that project.

Mr. Hainstock testified, on the basis of the same job records, that he could identify as relating to the Walnut Grove project those job records that were accompanied by a sketch or drawing. Mr. Hainstock did not know whether Kilgust might have been supplying materials to Havey for other projects during the Walnut Grove construction period.

The record shows there were a total of 20 job orders placed with Kilgust by Havey, and of those 20, 10 state specifically that they are "for Walnut Grove." Many of those 10 have identifying sketches. Of the remaining 10, six contain sketches which were identified by Mr. Hainstock as relating to Walnut Grove. The four unidentified job orders total $176.46.

The defendant presented no relevant evidence, and the trial judge concluded on the basis of the testimony and exhibits that Kilgust had met its burden, as plaintiff, in showing that the materials delivered to Havey were intended for the Walnut Grove project. We agree with the trial court's analysis that first, there was no evidence that Kilgust had supplied any materials or work to Havey during the period in question in connection with any project other than Walnut Grove and, second, the drawings which appeared on most of the job records revealed that the sheet metal products were of the custom-made type that Kilgust had contracted to supply for the project in question, and which would not normally be sold to others.

The trial court granted a money judgment for $1,554.63 including the claimed amount of $1,325.72, and prejudgment interest at the rate of 7 percent from the date of November 30, 1972, to the date of judgment, January 25, 1974. The money judgment was later amended to a judg-

ment of foreclosure of the lien, under which the property may be redeemed by paying the amount of the judgment, interest, and costs.

There is no dispute over the showing that Kilgust must make to sustain its claim of lien. In *Builder's Lumber Co. v. Stuart* (1959), 6 Wis. 2d 356, 364, 94 N. W. 2d 630, this court said:

"[W]e now declare it to be the law in Wisconsin that the delivery of materials to the owner or his agent, either upon the premises or otherwise, for use upon or in a particular project, is sufficient to sustain a mechanic's lien."

Requirement of delivery "for use upon or in" the project is the majority rule on the subject. *(See:* Note, *Creditors' Rights—Mechanics' Lien—Actual Use as a Requisite to a Lien,* 1960 Wis. L. Rev. 350.) The minority rule, which was rejected in *Stuart,* requires a showing that the lien claimant's materials were actually used in the project.

The defendants here argue that there was insufficient evidence that the materials were delivered in this case. The question here is whether the evidence presented by Kilgust supporting the verdict is sufficient to carry the plaintiff's case to the finder of fact, since there was no evidence offered by the defendants. The test to be applied here is not the one of "great weight and clear preponderance" of the evidence, as the parties argue, but whether the evidence presented is sufficient to withstand a motion for nonsuit at the end of the plaintiff's case. The rule has been set forth by this court in the following language:

". . . when the trial judge rules, either on motion for nonsuit, motion for a directed verdict, or motion to set aside the verdict, that there is or is not sufficient evidence upon a given question to take the case to the jury, the trial court has such superior advantages for judging of the weight of the testimony and its relevancy and effect that this court should not disturb the decision merely because, on a doubtful balancing of probabilities,

the mind inclines slightly against the decision, but only when the mind is clearly convinced that the conclusion of the trial judge is wrong." *Slam v. Lake Superior T. & T. Ry.* (1913), 152 Wis. 426 at 432, 140 N. W. 30, quoted recently in *Trogun v. Fruchtman* (1973), 58 Wis. 2d 569 at 585, 207 N. W. 2d 297.

Even though the testimony here was uncontradicted, the court is not obliged to adopt it if it is inherently improbable. *Lazarus v. American Motors Corp.* (1963), 21 Wis. 2d 76, 84, 123 N. W. 2d 548. But as this court said in *Thiel v. Damrau* (1954), 268 Wis. 76, 85, 66 N. W. 2d 747:

"Positive uncontradicted testimony as to the existence of some fact, or the happening of some event, cannot be disregarded by a court or jury in the absence of something in the case which discredits the same or renders it against the reasonable probabilities. . . ."

The evidence presented by the plaintiff in this case was not discredited and was not against the reasonable probabilities, and the trial court was justified in relying on it and in finding in favor of the plaintiff. We hold that Kilgust produced sufficient evidence to sustain the judgment of the trial court.

The second question is whether or not prejudgment interest should have been allowed. From the record we conclude that there is no question as to the amount of Fisher's liability for the delivered materials if he, in fact, was liable under lien law. We have already concluded that the trial court, based on the evidence, properly found that $1,325.72 was in fact owed to the plaintiff for delivered materials. Therefore the damages are liquidated, or "fixed and determinate," and an award of interest is proper. *Valiga v. National Food Co.* (1973), 58 Wis. 2d 232, 254, 206 N. W. 2d 377. Where full recovery is had on a claim for a contract price, and the trial involves no more than putting the plaintiff to proof of the defendant's liability, the requirement that the claim be

liquidable in advance is met. *Dahl v. Housing Authority of the City of Madison* (1972), 54 Wis. 2d 22, 32, 33, 194 N. W. 2d 618.

The court awarded interest at the rate of 7 percent. The legal rate at the time this cause of action arose was 5 percent.[2] We have found no cases in Wisconsin holding that the rate of prejudgment interest should be greater than the 5 percent legal rate of the statute. We agree with the rule as set forth in 47 C. J. S., *Interest*, pp. 44, 45, sec. 34:

"Where no specific rate of interest is named in a contract for the payment of money, interest will be computed at the legal rate, or at the rate fixed by statute as applicable in that situation. . . .

"Where the basis of the allowance of interest is the wrongful benefit to the other party, but proof of the rate which would produce an amount equal to such benefit is absent, the statutory legal rate should be adopted."

We therefore modify the judgment by reducing the prejudgment interest rate by 2 percent, thereby making the amount of interest due $76.46. Added to the principal amount, $1,325.72, and the costs of $105.96, the judgment stands at $1,508.14. As so modified, the judgment is affirmed.

*By the Court.*—Judgment modified and, as modified, affirmed.

---

[2] "138.04 **Legal rate.** The rate of interest upon the loan or forbearance of any money, goods or things in action shall be $5 upon the $100 for one year and according to that rate for a greater or less sum or for a longer or a shorter time; but parties may contract for the payment and receipt of a rate of interest not exceeding the rate allowed in s. 138.05, in which case such rate shall be clearly expressed in writing."