IN the MATTER OF the GUARDIANSHIP & ESTATE OF P.A.H., a Minor: WESTERN SURETY COMPANY, Appellant,

v.

P.A.H., a Minor, Joseph Muratore, Guardian ad Litem, and William R. Binetti, Successor Guardian of the Estate of P.A.H., Respondents.

Court of Appeals

*No. 82–2118. Argued July 15, 1983.—Decided October 26, 1983.*
(Also reported in 340 N.W.2d 577.)

For the appellant there were briefs and oral argument by *Charles Constantine* of *Constantine, Christensen, Krohn & Kerscher, S.C.*, of Racine.

For the respondents there was a joint brief and joint oral argument by *Joseph J. Muratore* and *William R. Binetti,* both of Racine.

Before Scott, C.J., Voss, P.J., and Robert W. Hansen, Reserve Judge.

HANSEN, R.J.   The threshold issue on this appeal is whether a successor guardian's attorney fees and the guardian ad litem fees are proper items of costs to be assessed against a former guardian and his surety where the trial court has determined that the former guardian has mismanaged guardianship assets.[1]

On October 15, 1980, Vernon A. Hanks petitioned the Racine county circuit court, probate branch, for an order appointing him guardian of his sister, P.A.H., a minor. On November 11, 1980, he was appointed the guardian of his sister's estate and person.  He signed a surety bond

---

[1] This matter had been previously decided and a decision released on August 22, 1983. However, this prior decision was vacated by the court and is being re-released with modifications.

in the amount of $40,000, appellant Western Surety Company being the surety.

On November 19, 1981, Joseph J. Muratore, guardian ad litem of P.A.H., filed an order to show cause for an accounting by Vernon A. Hanks. On December 11, 1981, Vernon Hanks agreed to step down as guardian for the estate of his sister. On February 10, 1982, William R. Binetti, an attorney, was appointed successor guardian of the estate of P.A.H. On February 22, 1982, following court hearings, the trial court made a finding that Vernon Hanks had received, on behalf of P.A.H., the sum of $26,870.86. The court also ruled that Vernon Hanks had constructively received the amount of $3,293 in interest, for total receipts on behalf of P.A.H. in the sum of $30,164.45. The trial court gave Vernon Hanks credit for approved expenditures in the amount of $7,250.28, leaving a total shortfall of $22,914.17. The liability of the guardian, Vernon Hanks, and his surety, Western Surety Company, for this shortage or shortfall in estate funds is not in dispute.

Rather, this appeal challenges the order of the trial court entered on July 23, 1982 holding that guardian Hanks and his surety were liable for the attorney fees of Joseph J. Muratore as guardian ad litem ($3,961.60) and of William R. Binetti as successor guardian ($2,490.50) plus disbursements of $49.25 and $72.50, respectively. Finding these fees both necessary and reasonable, the trial court ordered that the fees involved be paid by the ex-guardian and his surety as "costs of the suit."

On the initial or threshold issue of the attorney fees involved being taxable as "costs of suit," we begin by noting that in this state, no costs are "recoverable in any judicial proceeding except as clearly thus authorized [by statute]." *In re Reeseville Drainage District,* 156 Wis.

238, 239, 145 N.W. 671, 671 (1914). Review of the various statutes involved, including ch. 814 and sec. 878.09, Stats., dealing with costs allowable, shows no basis for the taxing of guardian ad litem fees against a former guardian and his surety. In fact, sec. 814.04(2), Stats., expressly provides: "Guardian ad litem fees shall not be taxed as a cost or disbursement." In regard to the fees for services of an attorney for a successor guardian, it appears clear that such fees are an expense of the guardian, chargeable to the estate of which he is guardian. As our state supreme court has held:

> While a guardian may employ an attorney to collect funds belonging to the estate of the ward, which attorney may be of the guardian's choosing, the necessity of the attorney's services and the amount of his fee are subject to the determination of the court having jurisdiction of the guardianship. Attorney's fees under sec. 319.24, Stats., are considered an expense of the guardian and are allowed in a reasonable amount in his account if the legal services were necessary for the proper performance of the guardian's duty. [Citations and footnotes omitted.]

*In re Guardianship of Schott*, 23 Wis. 2d 213, 216, 127 N.W.2d 19, 20–21 (1964).

On this appeal, in their brief and on oral argument, the respondents spend little time in the search for statutory authority for taxing guardian ad litem and attorney fees as costs of suit against a former guardian of an estate and his surety. Rather, they view the trial court order for payment of attorney and guardian ad litem fees as an equitable surcharge against the former guardian. In a case involving a suit by a remainderman for removal of a trustee and an accounting, the trial court had assessed the attorney fees incurred by the remainderman against the trustee. On the point of law involved, the state supreme court held:

[T]he court surcharged the trustee with the attorney's fees and accountant's fees of the remaindermen on equitable grounds and this action is claimed to be error.

The court considered it was not taxing costs for the amount of the fees but was surcharging the trustee and based its decision on the equitable proposition that the trustee had needlessly caused the remaindermen to incur these expenses to attain a proper accounting which they had a right to have. The trustee argues the trial court had no such equitable power and that this so-called surcharge is in effect a taxing of costs not authorized by the statute and especially cannot be justified under sec. 271.14, Stats., because no mismanagement or bad faith was found. . . .

On first impression there would seem to be merit in surcharging or making a trustee personally responsible for causing needless expenditures on the part of the remandermen. However, where the trustee's conduct is not found to be in bad faith but only substandard performance of his duty, we think that although compensation for his work may be denied he ought not in equity be personally liable for expenses he caused the remaindermen. . . .

We think the expenses of the remaindermen for their attorney . . . are properly paid out of this estate.

*Estate of Martin,* 39 Wis. 2d 437, 445, 159 N.W.2d 660, 663–64 (1968).

We do not read *Estate of Martin* as generally allowing the taxing of costs or making a surcharge or imposing a penalty as to guardian ad litem fees or fees for the attorney for the guardian. For in the *Martin* case, the supreme court reversed the final decree of the trial court with directions to disallow disbursements in the final account in the amount of $7,463.11, to disallow the trustee any compensation and to allow the attorney and accountant fees of the remainderman in the sum of $11,819.85 and $377.50, respectively, from the trust estate. *Id.* at 446, 159 N.W.2d at 664.

It is true that in *Martin*, the supreme court stated: "There may be cases within the equitable power of the court when a trustee should be charged personally with expenses he needlessly causes through his conduct, but we need not now decide what facts will call forth such relief." *Id.* Clearly, this door left open is to be the exception not the general rule. As clearly, there is to be something more than the fact of shortage or shortfall, for if this is all that is to be required, the exception would become the rule and the rule would be the exception. It would appear that there must be something extra, something shocking, something of bad faith, fraud or deliberate dishonesty before the exception permitting personal charging of a trustee or guardian with expenses caused by mismanagement replaces the general rule that such expenses are chargeable to the estate.

So, in determining whether this case can be considered so extreme in the mismanagement involved or bad faith demonstrated, we must go to the record and to the trial court's comments on it. It is not disputed that the guardian, Vernon Hanks, the brother of the minor ward, was unemployed during the time he served as guardian for his sister. He was married with two children. His sister lived with him, and many of the charges against the estate which the trial court found "not acceptable and should not be approved" involved charges for holiday gifts, family expenses, food, recreational trips and vacations for the family group, his sister included. While ignorance of the law is no excuse, there is testimony that guardian Vernon Hanks was not advised he was to keep records of all expenditures. It is clear that he did not do so. No finding of fraud or bad faith was made. Summarizing the entire situation, the trial court said of guardian Vernon Hanks:

There is no question that he [guardian Vernon Hanks] was guilty of mismanagement of the funds. There is no question that as a result of . . . this mismanagement substantial waste occurred to the guardianship estate. The amount has been measured and ruled on.

With respect to fraud, I—I don't believe that there was any actual fraud demonstrated here. Frankly, with fairness to Mr. Hanks, I don't believe there was anything on the record from which it could be inferred that there was an actual fraud being perpetrated so as to generate funds for himself or somebody else. But as to . . . as to malfeasance and causing waste, there's no question.

Based on this record and more particularly on the trial court's summary of it and comments on the conduct of guardian Vernon Hanks, we cannot locate any finding of fraud, bad faith or deliberate dishonesty which would entitle us to find that this is a case of such outrageous conduct or evil motive as to warrant making it that exceptional situation which *Estate of Martin* found might be a future exception to the general rule that guardian ad litem and attorney fees ought to be charged to the estate and not be surcharged or imposed as a personal penalty upon a guardian of an estate. We, therefore, find no basis for the trial court holding that the attorney and guardian ad litem fees involved here could be taxed as "costs of suit" against the guardian Vernon Hanks as a surcharge or penalty against such predecessor guardian. The general rule in *Estate of Martin,* not the exception to such rule, applies. Therefore, this case is reversed and cause remanded with directions to order the guardian ad litem and attorney fees be paid from the estate.

An entirely separate challenge or claim of error is made in the appellant's brief. In question form, it asks: "Where there has been waste and mismanagement of the assets of a minor guardianship estate, what rate of in-

terest should be used to determine the amount of income lost to the guardianship estate by the failure of the former guardian to properly invest the guardianship assets?" The trial court here set that rate of interest at the rate of twelve percent per annum. The appellant contends the appropriate rate of interest should be five percent per annum, the legal rate of interest in this state under sec. 138.04, Stats. We agree. It is the legal rate of interest set by statute that must be applied on claims ordered paid by judicial decree. It is sec. 138.04 which sets the legal rate of interest that applies, not sec. 138.05 (1)(a) which sets the maximum interest allowable in private transactions, nor sec. 814.04(4), Stats., which sets the interest payable on verdicts from the time of verdict. As the Wisconsin Supreme Court said in a case where a trial court awarded interest in the amount of seven percent: "We have found no cases in Wisconsin holding that the rate of prejudgment interest should be greater than the 5 percent legal rate of the statute." *Kilgust Heating Division of Wolff, Kubly and Hirsig, Inc. v. Kemp,* 70 Wis. 2d 544, 550, 235 N.W.2d 292, 295 (1975). As the supreme court did there, we do here, holding, "[the statutory legal rate should be adopted." *Id.* at 550, 235 N.W.2d at 296, quoting 47 C.J.S. *Interest* § 34 (1946).

On reversal and remand, we direct that the prejudgment interest rate be reduced by seven percent, from twelve percent to five percent. The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.