STARK, P.J.
*112 ¶ 1 Lori Laatsch appeals an order surcharging her based on actions she took as personal representative of Rebecca Derzon's estate (the Estate) and as the trustee of a related trust. The circuit court concluded Laatsch had acted in "extreme bad faith" in those roles, and it therefore ordered her to pay $1,235,954.20 in attorney fees that the Estate had incurred as a result of her conduct.
¶ 2 Laatsch argues the circuit court mistakenly believed predecessor judges had already concluded her actions constituted bad faith, and it therefore erroneously denied her a full evidentiary hearing on that issue. Laatsch further contends the court erred by surcharging her for actions she took both before she became personal representative and trustee and after she was removed from those roles. Finally, Laatsch argues the court improperly relied on WIS. STAT. § 701.1004 (2015-16),[1] in ordering her to pay the Estate's attorney fees.
*474 ¶ 3 We reject Laatsch's arguments. The issue before the circuit court was whether Laatsch's actions as personal representative and trustee rose to the level of bad faith for purposes of imposing a surcharge. The court's written decision shows that it did not mistakenly believe prior judges had already concluded Laatsch acted in bad faith. Instead, it properly relied on findings set forth in predecessor judges' decisions, which we affirmed, as well as other evidence the Estate presented at the evidentiary hearing. Based on those findings and evidence, the court concluded Laatsch's actions as personal representative and trustee rose to the level of "extreme bad faith." It therefore properly *113 exercised its equitable authority in surcharging Laatsch. Laatsch has failed to establish that the court surcharged her for actions she took outside her roles as personal representative and trustee. In addition, despite a passing reference to WIS. STAT. § 701.1004 in the court's written decision, it is clear the court properly surcharged Laatsch based on its equitable authority to do so. We therefore affirm the order imposing the surcharge.
BACKGROUND
¶ 4 This is the third appeal from circuit court proceedings involving the estate of Rebecca Derzon, who died in August 2008.[2] As such, many of the background facts set forth in this section are drawn from the factual recitations contained in our two previous opinions. See Laatsch v. Johnson , No. 2011AP377, unpublished slip op., 340 Wis.2d 741, 2012 WL 694935 (WI App Mar. 6, 2012) ( Laatsch I ); Laatsch v. Derzon , No. 2012AP2590, unpublished slip op., 359 Wis.2d 674, 2014 WL 7093570 (WI App Dec. 16, 2014) ( Laatsch II ).
¶ 5 Rebecca married David Derzon in 1978. David had two sons from a prior marriage-Mark and Alan Derzon. Rebecca had no children before marrying David, and they did not have any children together. However, over the years Rebecca developed close bonds with members of David's family, including Mark and Alan, whom she referred to as her sons. In addition, she and David jointly owned and operated Derzon Coin, a family business, during their marriage.
¶ 6 Although Rebecca had numerous siblings and half-siblings, she had close relationships with only two of them: Paul Johnson, her brother, and Laatsch, *114 her half-sister. Rebecca was close with Johnson for her entire life. She and Laatsch lived together in the same home until Rebecca was thirteen and Laatsch was three. After that, aside from some incidental contact during the mid-1970s, Rebecca and Laatsch had no contact until 1997. Although the parties dispute whether Rebecca and Laatsch had a close relationship after reuniting in 1997, it is undisputed Laatsch was a prominent figure in Rebecca's life during the approximately eighteen-month period leading up to Rebecca's death.
¶ 7 In 1995, Rebecca and David executed wills leaving their respective estates to one another. Both wills further provided that, if the other spouse did not survive the decedent by thirty days, the residue of the decedent's estate would be divided equally between Mark and Alan. However, in 2006, unbeknownst to David, Rebecca executed a codicil stating that, if David did not survive her by thirty days, Johnson and Mark would each receive forty percent of the *475 residue of her estate, and Alan would receive the remaining twenty percent.
¶ 8 David died on December 20, 2007, and, pursuant to the terms of his will, his entire estate passed to Rebecca. Rebecca subsequently altered the terms of her estate plan significantly. On March 10, 2008, she executed a financial power of attorney naming Laatsch as her agent. On the same date, she created the Rebecca R. Derzon Revocable Trust (the Trust) and executed a pour-over will that would transfer her assets into the Trust at the time of her death. The documents named Laatsch trustee of the Trust and personal representative of the Estate.
¶ 9 Under Rebecca's new estate plan, Laatsch would receive a seventy-five percent share of Derzon *115 Coin upon Rebecca's death, and Diane Mehalko, a longtime Derzon Coin employee, would receive the remaining twenty-five percent. Johnson would receive distributions totaling $500,000. The new estate plan directed the trustee to establish separate trusts upon Rebecca's death for Johnson's minor children-Sydney and Marina-and Laatsch's adult children-Robyn and Anna. It completely disinherited Mark and Alan.
¶ 10 Rebecca died in August 2008, just over five months after executing her new estate plan. In November 2008, Laatsch initiated informal probate proceedings, seeking to admit the March 10, 2008 will to probate. She represented to the circuit court that it was unnecessary to appoint a guardian ad litem for Sydney and Marina Johnson because their interests were "virtually represented" by Laatsch's daughters, Robyn and Anna.
¶ 11 However, in May 2010, Sydney and Marina filed a petition asserting they had "not received any financial benefit from or meaningful information about the Trust" since Rebecca's death. They asked the circuit court to compel Laatsch to produce certain documents related to Rebecca's estate plan; to require Laatsch to provide an inventory and accounting of the Estate and Trust; to remove Laatsch as trustee and personal representative and appoint "a suitable neutral third party" to fulfill those roles; and to order the Estate's law firm (hereinafter, the Cramer law firm), which had also drafted Rebecca's estate plan, to produce its "entire legal file" on Rebecca.
¶ 12 The circuit court, the Honorable Mel Flanagan presiding, issued an order requiring Laatsch and the Cramer law firm to produce the requested documents. The court scheduled a hearing for July 6, 2010, to address the other relief Sydney and Marina had *116 requested. Despite the court's order and the pending hearing, on May 27, 2010, the Cramer law firm asked the Register in Probate to close the informal administration of Rebecca's estate, representing that the administration was completed. Sydney and Marina objected to the closing of the Estate and filed a demand for formal administration. They later moved to disqualify the Cramer law firm, asserting it was "ostensibly acting as the law firm on behalf of the Estate and Trust while at the same time defending" Laatsch.
¶ 13 As of the July 6, 2010 hearing, Laatsch had not turned over any of the documents the circuit court had ordered her to produce. Following several additional hearings, the court concluded the Cramer law firm had a conflict of interest requiring its removal from the case. The court also granted Sydney and Marina's motion to remove Laatsch as personal representative and trustee, explaining in its written decision:
Ms. Laatsch's powers as PR [personal representative] were suspended on June 2, 2010, when the petition for formal proceedings was filed. Nonetheless, Ms. Laatsch continued to exercise the powers *476 as PR where she has refused to turn over to Petitioners discoverable and relevant documents, sought to sell undetermined assets of undetermined value to her daughter and other interested parties, and proposed a new firm as substitute counsel for the Estate and Trust. This has continued despite the fact that this Court entered an order on May 6, 2010, that required Ms. Laatsch to turn over complete estate and trust records to the Petitioners, and on October 14, 2010, the Court ordered the Respondent "to turn over to the Petitioners all the estate planning, estate and trust files within one week of the entry of this order." Ms. Laatsch and her counsel have ignored the duty of loyalty and the *117 duty to make full disclosure of all relevant facts due to the ... petitioning beneficiaries, which has resulted in protracted litigation and unnecessary expense for the Petitioners and the Estate and Trust. As such, the Court finds sufficient grounds to remove Ms. Laatsch as Personal Representative and Trustee.
¶ 14 Laatsch appealed Judge Flanagan's order removing her as personal representative and trustee, removing the Cramer law firm from the case, and requiring her to produce documents regarding the Estate. We affirmed the order in all respects. See Laatsch I , No. 2011AP377, unpublished slip op. With respect to Laatsch's removal as personal representative and trustee, we reasoned the circuit court did not erroneously exercise its discretion because the record showed that Laatsch: (1) failed to comply with the court's orders; (2) "tried to mislead" the court by alleging Sydney and Marina's interests were "virtually represented"; and (3) continued to act as personal representative even after the court suspended her powers. Id. , ¶ 12. We characterized Laatsch's conduct as "impermissible stonewalling in an attempt to deprive [Sydney and Marina] of their rightful interests." Id. , ¶ 22.
¶ 15 While Laatsch I was pending before this court, Alan, Mark and Johnson petitioned the circuit court to invalidate Rebecca's estate plan, alleging it was the product of undue influence by Laatsch. After a ten-day trial, the Honorable Jane Carroll issued a written decision refusing to admit the March 10, 2008 will to probate based on "irregularities" in the document-primarily, a large "Draft" watermark running diagonally across the signature page that did not appear on any other page of the will. The court also emphasized that Laatsch and the Cramer law firm had *118 withheld key documents for an extended period of time, even after being ordered to produce them. Based on that delay, the court found that "the documents were altered or destroyed for the purpose of hiding information from [Mark and Alan], who were making inquiries for years beginning immediately after Rebecca's death." The court further found that the "length of the delay, and the number of irregularities in the documents provided, established that Lori Laatsch and her attorneys had something to hide; their motives are suspect."
¶ 16 The circuit court also concluded the March 10, 2008 will and trust were invalid due to undue influence by Laatsch. Applying the two-prong test for undue influence,[3] the court first concluded a confidential relationship existed between Rebecca and Laatsch. The court noted that: Laatsch was Rebecca's agent under the financial power of attorney; Laatsch "became a much more prominent and consistent figure in Rebecca's life after David became ill"; Laatsch and Rebecca essentially *477 ran Derzon Coin together after David died; Laatsch had access to Rebecca's condominium; Laatsch and Rebecca opened a safe deposit box together; and Laatsch was present at Derzon Coin when the will, trust, and power of attorney were signed. The court also emphasized Rebecca's "fragile emotional state" following David's death, including her depression, erratic behavior, heavy drinking, and use of prescription sleeping pills.
¶ 17 The circuit court next concluded there were suspicious circumstances surrounding the changes to Rebecca's estate plan. In support of that conclusion, *119 the court again cited the irregularities regarding the March 10, 2008 will and trust, as well as the subsequent efforts by Laatsch and the Cramer law firm to withhold pertinent documents from other interested parties. The court also noted the 2008 will and trust represented a "substantial departure" from Rebecca's prior estate plan, and there was "virtually no explanation" for Rebecca's decision to disinherit Mark and Alan and significantly reduce the bequest to Johnson.
¶ 18 The circuit court ultimately concluded Laatsch had failed to rebut the presumption of undue influence created by the presence of a confidential relationship and suspicious circumstances. In so doing, the court found the actions of Laatsch and the Cramer law firm "call[ed] their motives and their credibility in question." In addition to the acts discussed above, the court also noted that, after Rebecca's death, Laatsch and Diane Mehalko "recovered $137,000 in cash from two safe deposit boxes leased by Rebecca," which money "was omitted from the inventory filed with [the] Probate Court." The court rejected Laatsch's attempt to blame her attorneys for her actions, finding that Laatsch is "an intelligent woman" and was "at a minimum ... complicit in her attorneys' concerted efforts to withhold information."
¶ 19 Laatsch appealed the circuit court's decision invalidating the March 10, 2008 will and trust. While her appeal was pending, the Estate petitioned the circuit court to surcharge Laatsch for the attorney fees and costs it had incurred as a result of her conduct. The circuit court, Judge Carroll presiding, stayed the petition for surcharge pending the resolution of both Laatsch's appeal and the Estate's malpractice claim against the Cramer law firm. We subsequently affirmed the circuit court's decision invalidating the March 10, *120 2008 will and trust. See Laatsch II , No. 2012AP2590, unpublished slip op. ¶ 1. The Estate settled its legal malpractice claim against the Cramer law firm in April 2015.
¶ 20 Thereafter, the Estate filed an amended petition to surcharge Laatsch. The circuit court, the Honorable David Borowski presiding, held a two-day evidentiary hearing on the amended petition. On May 20, 2016, Judge Borowski issued a written decision and order surcharging Laatsch in the amount of $1,235,954.20.[4] The court found that Laatsch "acted in extreme bad faith many times before and after [Rebecca's] death, at the Expense of the Estate." It explained:
Laatsch did not merely mismanage the Estate funds. She intentionally and conveniently re-entered Rebecca's life as Rebecca's husband was dying, after years of having no contact with Rebecca .... She convinced Rebecca, in her declining physical and mental health, to leave 75% of Derzon Coin to her and appoint her as trustee and personal representative.
*478 Then, after Rebecca's death, she engaged in a pattern of deceit for years that needlessly prolonged the litigation she herself caused-termed "impermissible stonewalling" by the appellate court.
The court concluded Laatsch "abused her fiduciary position, to her great personal benefit, time and time again," and her actions "have been nothing short of despicable, easily rising to the level of bad faith, fraud, and deliberate dishonesty." The court further found *121 that the amount of the Estate's claimed attorney fees was reasonable.
¶ 21 Laatsch now appeals the order surcharging her for the Estate's attorney fees. Additional facts are set forth in the discussion section as necessary.
DISCUSSION
¶ 22 Under the American Rule, "a prevailing litigant ordinarily is not entitled to collect a reasonable attorney's fee from the opposing party as part of his or her damages or costs." Watkins v. LIRC , 117 Wis. 2d 753, 758, 345 N.W.2d 482 (1984). However, the American Rule "does not apply when there are contractual or statutory provisions authorizing the recovery of attorney's fees by a prevailing litigant." Id. In addition, courts have occasionally recognized common law exceptions to the American Rule. See, e.g. , Hall v. Gregory A. Liebovich Living Trust , 2007 WI App 112, ¶ 17, 300 Wis. 2d 725, 731 N.W.2d 649.
¶ 23 In Richards v. Barry , 39 Wis. 2d 437, 445, 159 N.W.2d 660 (1968), our supreme court considered whether a court had equitable authority to surcharge a trustee for attorney fees he "needlessly caused the remaindermen to incur ... to attain a proper accounting which they had a right to have." The court stated:
On first impression there would seem to be merit in surcharging or making a trustee personally responsible for causing needless expenditures on the part of the remaindermen. However, where the trustee's conduct is not found to be in bad faith but only substandard performance of his duty, we think that although compensation for his work may be denied he ought not in equity to be personally liable for expenses he caused the remaindermen.
*122 Id. The court implicitly determined the trustee in Richards had not acted in bad faith, and it therefore reversed the surcharge against him. Id. at 445-46, 159 N.W.2d 660. The court stated in conclusion, "There may be cases within the equitable power of the court when a trustee should be charged personally with expenses he needlessly causes through his conduct, but we need not now decide what facts will call forth such relief." Id. at 446, 159 N.W.2d 660.
¶ 24 This court later relied on Richards in Western Surety Co. v. P.A.H. , 115 Wis. 2d 670, 340 N.W.2d 577 (Ct. App. 1983). The issue there was whether a successor guardian's attorney fees and a guardian ad litem's fees could be assessed against a former guardian who had mismanaged guardianship assets. Id. at 671, 340 N.W.2d 577. We concluded Richards permitted such an award, but only in limited circumstances. Western Surety , 115 Wis. 2d at 675, 340 N.W.2d 577. We explained:
[C]learly, there is to be something more than the fact of shortage or shortfall, for if this is all that is to be required, the exception would become the rule and the rule would be the exception. It would appear that there must be something extra, something shocking, something of bad faith, fraud or deliberate dishonesty before the exception permitting personal charging of a trustee or guardian with *479 expenses caused by mismanagement replaces the general rule that such expenses are chargeable to the estate.
Id. After considering "the record" and "the trial court's comments on it," we concluded there was no "finding of fraud, bad faith or deliberate dishonesty" in Western Surety that would justify assessing attorney fees and guardian ad litem fees against the former guardian. Id. at 675-76, 340 N.W.2d 577.
¶ 25 We considered a similar issue in *123 Gundlach v. Estate of Pirsch , 148 Wis. 2d 425, 435 N.W.2d 317 (Ct. App. 1988). There, the circuit court had ordered a former co-personal representative of an estate to pay the beneficiaries' attorney fees. Id. at 426-27, 435 N.W.2d 317. Citing Western Surety , we stated "something more is needed ... before attorney's fees can be ordered paid by the personal representative"-namely, bad faith, fraud, or deliberate dishonesty. Gundlach , 148 Wis. 2d at 433, 435 N.W.2d 317. Because the circuit court "made no finding as to the presence or absence of something fraudulent, shocking or in bad faith," we remanded for further findings and conclusions on that issue. Id. at 434, 435 N.W.2d 317.
¶ 26 These cases indicate that a limited, common law exception to the American Rule exists permitting a circuit court to exercise its equitable authority to surcharge a trustee, guardian, or personal representative for attorney fees incurred by another party as a result of the trustee's, guardian's, or personal representative's fraud, bad faith, or deliberate dishonesty. Here, the circuit court concluded Laatsch's actions as personal representative and trustee rose to the level of bad faith, and it therefore surcharged her for attorney fees the Estate incurred as a result of her conduct. Laatsch argues the court erred in three respects.
I. Failure to hold a full evidentiary hearing
¶ 27 Laatsch first argues the circuit court erroneously denied her a full evidentiary hearing "based on its belief that predecessor judges already had found Laatsch acted in 'bad faith.' " She contends that, by limiting her ability to present evidence, the court violated her right to due process. She further contends the evidence that was introduced during the "curtailed" hearing was insufficient to support a determination that she acted in bad faith.
*124 ¶ 28 We reject Laatsch's assertion that the circuit court improperly denied her a full evidentiary hearing. The court conducted a two-day hearing in February 2016. On the first day of the hearing, the Estate presented a number of exhibits, including Judge Flanagan's decision removing Laatsch as personal representative and trustee, Judge Carroll's decision invalidating the March 10, 2008 will and trust, and this court's opinions affirming those decisions. The Estate also presented documents indicating that Laatsch withdrew $792,000 from Derzon Coin's accounts during the approximately two-week period before Judge Carroll issued her decision invalidating the March 10, 2008 will and trust.[5] In addition, the Estate introduced evidence indicating that Laatsch executed a marital settlement agreement on July 26, 2010, which provided her ex-husband would receive a smaller divorce settlement if Rebecca's estate plan were invalidated.
¶ 29 The Estate also presented the testimony of two witnesses at the hearing on its surcharge petition. Alan Derzon testified he had prepared a summary of the *480 legal fees and expenses the Estate incurred as a result of Laatsch's actions. That document indicated the Estate had incurred legal fees and expenses in excess of $1.6 million.
¶ 30 The Estate also presented the expert testimony of attorney Theodore Hodan. Hodan testified, to a reasonable degree of professional certainty, that the attorney fees the Estate incurred were "necessary and proper, reasonable and usual and customary." Hodan *125 further testified the fees were consistent with what other lawyers in the Milwaukee area customarily charged for similar services. He also testified Laatsch's conduct "require[d] the appointment and hiring of the described attorneys and the payment by the estate of their fees and expenses."
¶ 31 After the Estate rested its case at the end of the first day of the evidentiary hearing, Laatsch's attorney stated he intended to present the testimony of three attorneys from the Cramer law firm the next day. He indicated that those attorneys would testify as fact witnesses, not experts, and that Laatsch did not intend to testify. When asked to make an offer of proof regarding the testimony his witnesses would offer, Laatsch's counsel responded, "We're going to be talking about the management of the estate, the management of the trust, the assumption of responsibility between lawyer and client and when different lawyers hand it off to other lawyers." The Estate's attorney objected that such testimony would not be relevant because "these are all issues that the court has already ruled on at prior-as to the appropriateness of Ms. Laatsch's conduct." The circuit court indicated it did not intend to allow Laatsch to relitigate issues that had already been decided by Judge Carroll, whose decision this court had affirmed.
¶ 32 The next morning, the circuit court again questioned Laatsch's attorney about the testimony his witnesses intended to provide, stating:
I'm still not clear from yesterday.... What are they going to testify to? Just so everybody is clear, nothing they say is going to change this Court's mind about what Judge Carroll and the Court of Appeals said. It's not. Period. It's the law of the case. It's the law from *126 the Court of Appeals. I am not revisiting any of that. I don't have the authority to, first of all, and I have no inclination, whatsoever.
....
So beyond everything else, what's he going to testify [to] ...? I need an offer of proof or I'll put them on the stand as to what they're going to testify to before they get to the merits. I'm not revisiting what Judge Carroll did. I'm not.
After some additional discussion, the court again asked Laatsch's counsel to provide "[s]pecific facts as an offer of proof." Counsel responded that one of his witnesses, attorney Mark Andringa, would testify to "what Lori Laatsch did in administering the estate, what Lori Laatsch did in administering the trust, her activities as a fiduciary." The court subsequently stated:
If there's something that [Laatsch's witnesses have] to say ... that's not revisiting decisions of Judge Carroll or Judge Flanagan or the Court of Appeals, then they can testify.
But if they are going to just come up here, and ... say the same things [they] said to Judge Carroll that Judge Carroll didn't believe, then there's no point....
¶ 33 When attorney Andringa ultimately took the stand, he testified he was involved with Rebecca's estate and had represented Laatsch in her roles as trustee and personal representative. Laatsch's counsel then asked whether, during the probate proceedings, *481 "there was a request made of the Probate Registrar to exercise its discretion and allow the use of virtual representation rather than the appointment of a *127 guardian ad litem." The Estate's attorney objected, asserting Judge Carroll "specifically ruled on the appropriateness of the behavior before the Registrar and Probate [sic]." The circuit court sustained the Estate's objection, explaining, "That issue has been decided and affirmed by the Court of Appeals."
¶ 34 The circuit court again asked Laatsch's counsel, "[W]hat's [attorney Andringa] going to testify to that Judge Carroll has not already decided?" Laatsch's counsel responded, "What was done." After the Estate's attorney again objected on relevance grounds, the court stated, "Judge Carroll decided that what was done in presenting that issue of virtual representation to the probate court was part of 'a conscious attempt to affect the outcome of litigation or flagrant knowing disregard of the judicial process.' That sounds like a finding to me." Laatsch's attorney responded, "It is at odds with the facts, Your Honor." The court stated that response clearly showed that Laatsch's attorney was "trying to retry this decision, the 29-page decision from Judge Carroll, which was affirmed by the Court of Appeals." The court cautioned:
If that's where we're going, we're done with this witness. Judge Carroll has made this ruling. You can disagree with it, counsel. Your client can disagree with it. The witness can disagree with it. Judge Carroll decided, and she's the one that makes the decision, subject to the review of the Court of Appeals, and they agree.
In response to the court's comments, attorney Andringa stated he "disagree[d] with" the prior decisions by Judge Carroll and the Court of Appeals.
¶ 35 The parties and the circuit court continued to discuss the limits of attorney Andringa's testimony.
*128 At one point, the circuit court accused both Laatsch and her attorney of rolling their eyes at the court. The following exchange then occurred:
MS. LAATSCH: I'm tired of being lied about.
THE COURT: Then take the stand. Lied about by who?
MS. LAATSCH: Everyone from the very beginning.
THE COURT: Well, Ms. Laatsch, as your attorney hopefully has explained to you, by now about 25 times, all of that is water under the bridge. Judge Carroll made multiple-I mean how many times do I have to say this, a 29-page decision going on ad nauseam, at length, about your wrongdoing? The Court of Appeals affirmed her.
You can maintain, just like someone who is found guilty by a jury and sent off to prison, you can maintain your innocence or lack of guilt or lack of culpability or lack of wrongdoing or lack of theft or lack of whatever, but that's not where we are. No judicial official, Judge Flanagan, the Court of Appeals, Judge Carroll has believed that position that you take.
¶ 36 Laatsch's attorney then attempted to question attorney Andringa about an accounting the Cramer law firm had prepared. When counsel specifically asked about appraisals performed by Powers Jewelry and whether attorney Andringa was involved in choosing Powers as the appraiser, the circuit court interjected, "Okay, now I'm lost. What does Powers Jewelry and something from 2010 or whatever have to do with what we're here for?" Laatsch's counsel responded, "Your Honor, this is an estate proceeding." The court interpreted that remark as an insult to its intelligence, *129 stating it was "[s]o insulting, in fact, that we're done." The court indicated *482 the case would continue following a lunch break. After the break, Laatsch's attorney declined to question attorney Andringa further and also declined to call any other witnesses. Although the circuit court invited the parties to submit post-hearing briefs, Laatsch declined to do so.
¶ 37 On this record, we reject Laatsch's argument that the circuit court improperly denied her a full evidentiary hearing. As the foregoing summary shows, Laatsch presented the testimony of a single witness during the evidentiary hearing on the Estate's petition to surcharge. It became clear early on that the sole purpose of that witness's testimony was to dispute prior factual findings and legal conclusions made by Judge Flanagan and Judge Carroll and affirmed by the Court of Appeals. In her decision, Judge Flanagan removed Laatsch as trustee and as personal representative of the Estate. In support of that decision, Judge Flanagan found that: Laatsch continued to act as personal representative after her powers were suspended; she refused to turn over discoverable and relevant documents; and she attempted to sell Estate assets to her daughter and other interested parties. Judge Flanagan further stated that Laatsch and her attorneys had "ignored the duty of loyalty and the duty to make full disclosure of all relevant facts due to the ... petitioning beneficiaries, which has resulted in protracted litigation and unnecessary expense for the Petitioners and the Estate and Trust."
¶ 38 Judge Carroll subsequently invalidated the March 10, 2008 will and trust, concluding they were the product of undue influence by Laatsch. As support for her conclusion that Laatsch unduly influenced Rebecca, Judge Carroll made a number of findings *130 regarding Laatsch's conduct following Rebecca's death. Specifically, she found that both Laatsch and her attorneys purposefully withheld documents regarding Rebecca's estate plan from other interested parties. She further found that Laatsch "represented to the court that no guardian ad litem was needed for Paul Johnson's children," which representation "was not true." In addition, Judge Carroll found that Laatsch improperly attempted to close the probate proceedings after being ordered to produce certain documents. Judge Carroll also found that Laatsch removed $137,000 from two of Rebecca's safe deposit boxes, which money was not listed on the inventory filed with the probate court. Judge Carroll expressly rejected Laatsch's contention that her attorneys were to blame for her actions, emphasizing Laatsch's intelligence and finding that, at a minimum, Laatsch was "complicit" in her attorneys' efforts to withhold information.
¶ 39 We affirmed both Judge Flanagan's and Judge Carroll's decisions. In Laatsch I , we stated Laatsch: "(1) did not comply with the circuit court's orders; (2) tried to mislead the probate court by saying Sydney and Marina Johnson were 'virtually represented'; and (3) continued to act as personal representative after the circuit court suspended those powers." Laatsch I , No. 2011AP377, unpublished slip op. ¶ 12. In Laatsch II , we upheld Judge Carroll's conclusion that Laatsch unduly influenced Rebecca. Laatsch II , No. 2012AP2590, unpublished slip op. ¶ 1. We rejected Laatsch's argument that the money she took from Rebecca's safe deposit boxes was not part of Rebecca's estate plan, as well as her argument that her petition to dispense with a guardian ad litem for Sydney and Marina was appropriate. Id. , ¶¶ 46-47.
*131 ¶ 40 As the circuit court correctly noted, our opinions in Laatsch I and Laatsch II affirming Judge Flanagan's and Judge Carroll's decisions are the law of the case. "[A] decision on a legal issue by an appellate court establishes the law of *483 the case, which must be followed in all subsequent proceedings in the trial court or on later appeal." Univest Corp. v. General Split Corp. , 148 Wis. 2d 29, 38, 435 N.W.2d 234 (1989).[6] As such, the circuit court was not at liberty to disregard our prior decisions and consider anew what Laatsch did or did not do in her capacity as trustee and personal representative, and whether her actions were improper. The issue before the court was whether Laatsch's actions, as established in the previous proceedings, rose to the level of bad faith for purposes of imposing a surcharge. Laatsch did not present any testimony-expert or otherwise-on that issue. She simply attempted to relitigate issues that had already been decided by Judges Flanagan and Carroll, whose decisions we affirmed on appeal. The circuit court properly prohibited her from doing so.[7] *132 ¶ 41 Laatsch asserts the circuit court erroneously believed that Judge Flanagan and Judge Carroll "already had found Laatsch acted in 'bad faith.' " The record reveals that is not the case. The court's written decision shows that it relied on findings set forth in Judge Carroll's decision, which we affirmed, as well as other evidence the Estate presented at the evidentiary hearing. Based on those findings and evidence, the court concluded Laatsch's actions rose to the level of "extreme bad faith." Nothing in the court's decision indicates it mistakenly believed either Judge Flanagan or Judge Carroll had already made a determination as to whether Laatsch acted in bad faith.
¶ 42 We also reject Laatsch's argument that the circuit court violated her right to due process during the evidentiary hearing by "preventing [her]" from presenting evidence that she did not act in bad faith. Due process requires notice and the opportunity to be heard. Schultz v. Sykes , 2001 WI App 255, ¶ 25, 248 Wis. 2d 746, 638 N.W.2d 604. The opportunity to be heard includes the right to present a complete defense, which includes the "right to offer the testimony of witnesses." Brown Cty. v. Shannon R. , 2005 WI 160, ¶ 65, 286 Wis. 2d 278, 706 N.W.2d 269. Here, Laatsch had the opportunity to present witnesses. However, the circuit court properly prevented the only witness she offered from testifying as to matters that had already been decided in the circuit court and affirmed on appeal. Laatsch does not explain why she had a due process right to present testimony whose only purpose was to relitigate factual findings and legal conclusions from those prior decisions.
*133 ¶ 43 Moreover, despite the circuit court's repeated requests, Laatsch failed to make any offer of proof as to the specific testimony her witnesses would provide on the issue of bad faith. On appeal, she merely states in a conclusory fashion that her witnesses "could have provided important testimony as to their actions and *484 Laatsch's conduct in relation to the actions that they took, which were later criticized by the court." Without specific information as to what testimony Laatsch's witnesses would have provided, there is no basis for us to conclude their testimony would have made a difference in the outcome of the surcharge proceedings. The erroneous exclusion of evidence does not require a new trial where the error was harmless-i.e., where it is not reasonably possible the error contributed to the outcome of the action. Martindale v. Ripp , 2001 WI 113, ¶¶ 30, 71, 246 Wis. 2d 67, 629 N.W.2d 698.
¶ 44 Laatsch also argues the evidence that was presented during the evidentiary hearing was insufficient to support the circuit court's conclusion that she acted in bad faith. We disagree.[8]
¶ 45 As noted above, the Estate submitted Judge Flanagan's and Judge Carroll's decisions at the evidentiary hearing, as well as our opinions in *134 Laatsch I and Laatsch II . Collectively, those decisions established that, while acting as personal representative and trustee, Laatsch: (1) attempted to admit a will to probate that was the product of her own undue influence; (2) improperly withheld documents from other interested parties, even after she was ordered by the court to produce them; (3) improperly represented to the court that Sydney and Marina Johnson did not need a guardian ad litem; (4) continued to act as personal representative after the court suspended her powers; and (5) took $137,000 from Rebecca's safe deposit boxes and failed to include that money in an inventory filed with the court. The Estate also submitted evidence indicating Laatsch executed a marital settlement agreement providing that her ex-husband would receive a smaller divorce settlement if Rebecca's estate plan were invalidated, which reasonably suggests Laatsch was aware of the existence of a basis to challenge the March 10, 2008 will and trust. Finally, the Estate submitted evidence that Laatsch withdrew $792,000 from Derzon Coin's accounts shortly before Judge Carroll issued her decision invalidating the March 10, 2008 will and trust.
¶ 46 Taken together, this evidence amply demonstrates that Laatsch acted in bad faith. She did not merely mismanage the Estate and Trust. Rather, her actions demonstrate she deliberately acted in a way that was calculated to benefit herself, to the detriment of other parties claiming an interest in the Estate. This conduct is sufficient to qualify as the "something extra, something shocking, something of bad faith" required by prior case law in order to surcharge Laatsch for the attorney fees the Estate incurred as a result of her conduct. See Western Surety , 115 Wis. 2d at 675, 340 N.W.2d 577. We therefore reject Laatsch's argument that the evidence *135 was insufficient to justify the imposition of a surcharge. We instead agree with the circuit court's assessment that, "[i]f ever there was a case that demands a surcharge and sanctions, this is it."
II. Surcharge based on acts Laatsch committed before she became personal representative and trustee and after her removal from those roles
¶ 47 Laatsch next argues the circuit court erred by surcharging her based on acts she committed both before she *485 became personal representative and trustee and after she was removed from those roles. In support of this contention, Laatsch cites the circuit court's statement that she "acted in extreme bad faith many times before and after Rebecca Derzon's death." (Emphasis added.) Laatsch argues the court had no authority to impose a surcharge for acts she committed outside of her capacity as personal representative and trustee.
¶ 48 We reject Laatsch's argument for two reasons. First, the mere fact that the circuit court stated Laatsch acted in bad faith prior to Rebecca's death does not mean the court surcharged her for actions taken before that date.
¶ 49 Second, while Laatsch's brief-in-chief lists each of the categories of fees and expenses the Estate requested, she develops an argument related to only one of those categories-namely, just over $1.3 million in legal fees the Estate paid to challenge the validity of the March 10, 2008 will and trust. See *136 State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not address undeveloped arguments). Laatsch argues the litigation contesting the will and trust "focused on Laatsch's conduct with respect to Rebecca Derzon before her death, and therefore before Laatsch's role as personal representative and trustee." However, regardless of her prior conduct, Laatsch sought to admit the March 10, 2008 will to probate in her capacity as personal representative. It was her action in doing so that caused the Estate to incur legal fees in order to challenge the will's validity. The circuit court therefore properly surcharged Laatsch for the $1.3 million the Estate spent to contest the March 10, 2008 will and trust.
III. The circuit court's reference to WIS. STAT. § 701.1004
¶ 50 Finally, Laatsch argues the circuit court improperly relied on WIS. STAT. § 701.1004 as a basis to award the Estate its attorney fees. Enacted in 2013, that statute provides, in relevant part: "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." Sec. 701.1004(1) ; see also 2013 Wis. Act 92, § 164.[9]
*137 ¶ 51 The circuit court's brief reference to WIS. STAT. § 701.1004 does not provide a basis to reverse its order surcharging Laatsch. Although the court stated its equitable authority to award the Estate attorney fees arose from that statute,[10] it correctly cited Richards for the proposition that a court has "equitable discretion" to surcharge a trustee for reasonable attorney fees caused by his or her conduct. The court also properly cited Western Surety for the proposition that, in order to impose a surcharge, a court must conclude the trustee or personal representative's *486 conduct amounted to "something of bad faith, fraud or deliberate dishonesty." After analyzing the evidence presented, the court concluded Laatsch had acted "in extreme bad faith." When read in its entirety, the court's decision clearly demonstrates that, regardless of its reference to § 701.1004, the court ultimately surcharged Laatsch based on its equitable authority to do so, as recognized in Richards and Western Surety .[11]
By the Court. -Order affirmed.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Because this appeal involves multiple individuals with the last name Derzon, we generally refer to them by their first names in order to avoid confusion.

See Hoeft v. Friedli , 164 Wis. 2d 178, 184-85, 473 N.W.2d 604 (Ct. App. 1991) (explaining undue influence can be established using either a two-prong test or a four-prong test).

The Estate claimed it had incurred a larger amount of attorney fees and expenses due to Laatsch's conduct. However, the Estate agreed to offset that amount by the amount of the legal malpractice settlement it received from the Cramer law firm.

The record reflects that Laatsch returned the money several days later, after being asked to do so by the special administrator of the Estate.

Whether a decision establishes the law of the case is a question of law that we review independently. State v. Stuart , 2003 WI 73, ¶ 20, 262 Wis. 2d 620, 664 N.W.2d 82.

Laatsch asserts probate is "a series of special proceedings, each of which is terminated by orders rather than judgments." She cites Wis. Stat. § 865.04(2), which provides that, in informal administration probate proceedings, the "determination of each issue and the completion of each proceeding required for the administration of a decedent's estate is independent of any other issue or proceeding involving the same estate." Be that as it may, an appellate decision constituting the law of the case applies in "all subsequent proceedings in the trial court or on later appeal." Univest Corp. v. General Split Corp. , 148 Wis. 2d 29, 38, 435 N.W.2d 234 (1989). Laatsch cites no authority indicating that the law of the case doctrine does not apply in probate proceedings.

The parties dispute the standard of review that applies to this issue. Laatsch asserts we should independently review the circuit court's conclusion that she acted in bad faith. The Estate asserts we should review the court's decision for an erroneous exercise of discretion. We need not resolve this dispute because, even applying a de novo standard of review, we conclude the record amply demonstrates that Laatsch acted in bad faith.

Although Laatsch notes that Wis. Stat. § 701.1004 was enacted in 2013, she does not develop any argument that the statute does not apply in this case because her actions as trustee took place before the statute's enactment. We will not abandon our neutrality to develop such an argument for her. See Industrial Risk Insurers v. American Eng'g Testing, Inc. , 2009 WI App 62, ¶ 25, 318 Wis. 2d 148, 769 N.W.2d 82.

The circuit court's statement to that effect was technically incorrect. Our supreme court first recognized a court's equitable authority to surcharge a trustee in Richards v. Barry , 39 Wis. 2d 437, 159 N.W.2d 660 (1968), which was decided over forty years before Wis. Stat. § 701.1004 was enacted.

The parties have not developed any argument as to whether Wis . Stat . § 701.1004 supplants or modifies a circuit court's common law, equitable authority to surcharge a trustee. We therefore do not address that issue.